# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| STEVEN FODER | : | |
| | : | |
| Plaintiff, | : | Civil Action |
| | : | |
| v. | : | Case No.: 2:14-CV-03935-LDW |
| | : | |
| PORT AUTHORITY TRANS | : | |
| HUDSON CORPORATION | : | |
| Defendant. | : | |

## JOINT FINAL PRETRIAL ORDER

The following shall constitute the Final Pretrial Order pursuant to Rule 16, Federal Rules of Civil Procedure. This Final Pretrial Order shall govern the conduct of the trial of this case. Amendments to this Order will be allowed only in exceptional circumstances to prevent manifest injustice. See Fed. R. Civ. P. 16(e). Counsel are urged to move to amend in a timely fashion any portion of the Order that must be changed or modified between the filing of the Order and the trial date.

**APPEARANCES:**

**For Plaintiff**

Anthony M. DiGiulio
Barish Rosenthal
3 Logan Tower
1717 Arch Street, Suite 4020
Philadelphia, PA 19103

**For Defendant**

Nicholas Mino
PATH
4 World Trade Center
150 Greenwich Street, 24th Floor
New York, NY 10006

## PART I.     JURISDICTION AND BRIEF SUMMARY OF THE CASE:

The following shall specifically set forth the jurisdictional basis of this action as well as a brief summary of the claims and defenses.

## 1. NATURE OF THE ACTION AND JURISDICTION OF THE COURT

### By Plaintiff:

This Federal Employer's Liability Act claim arises out of an incident, which took place on July 22, 2011. On that date, Plaintiff Steven Foder was in the course and scope of his employment with Defendant, PATH, when he was injured while attempting to climb onto Defendant's rail car at Journal Square Station, in Jersey City, New Jersey. More specifically, the rail car at issue did not have non-slip safety grip tape in the exact area where Plaintiff is trained and required to put his foot when boarding Defendant's equipment. There is a specific area where the non-slip grip tape is to be applied to the rail car. Several of Defendant's employees testified that Defendant has made it a priority to ensure that its fleet of rail cars are all equipped with the non-slip grip tape. Further, Defendant's employees testified that the purpose of this non-slip grip tape is to aid employees by preventing them from losing traction. Unfortunately, due to the absence of the non-slip grip tape, Plaintiff's foot slipped off of the rail car and he fell to the ground and suffered a severe right ankle fracture. Plaintiff's fracture required three surgeries to adequately repair.

### a. Federal Employers' Liability Act

Plaintiff brings this action against Defendant under a special Act of Congress entitled the Federal Employers' Liability Act ("FELA"). See 45 U.S.C.A. §§51, et seq. (1908). The FELA provides in substance that every railroad engaged in interstate commerce shall be liable in damages for injuries to its employees resulting in whole or in part from the negligence of any of its officers, agents or employees or from any defect or deficiency, due to its negligence, in its cars, machinery, track, roadbed or work areas. Id.

2

The FELA imposes on a railroad duty to exercise reasonable care to provide all of its employees with a reasonably safe place in which to work, reasonably safe conditions in which to perform their duties, and reasonably safe tools and equipment with which to complete their jobs. See Shenker v. Baltimore & Ohio R.R., 374 U.S. 1 (1963); Urie v. Thompson, 337 U.S. 163 (1949); Bailey v. Central Vermont R.R., 319 U.S. 350 (1943); Carter v. Union R.R., 438 F.2d 208 (3d Cir. 1971); Pehowic v. Erie Lackawanna R.R., 430 F.2d 697 (3d Cir. 1970). Under the FELA, a jury may find the defendant liable for plaintiff's injuries if it determines by a preponderance of the evidence that: (1) the defendant was a railroad engaged in interstate commerce; (2) the plaintiff was an employee of the defendant in interstate commerce, acting in the course of his employment; (3) the defendant, by or through its employees, officers, or agents, was negligent; and, (4) such negligence played any part, no matter how slight, in producing the plaintiff's injury. See generally 5 L. Sand, et al., Modern Federal Jury Instructions, p.89-7, Instruction 89-2 (1997).

Under the FELA, a railroad is liable in damages for breaching its non-delegable duty to provide a safe place to work if the negligent acts or omissions of its officers, agents, or employees played any part, even the slightest, in producing plaintiff's injury. See Rogers v. Missouri Pacific R.R., 352 U.S. 500 (1957). It does not matter that, from the evidence, a jury may also attribute plaintiff's injury to other causes. See Rogers, supra. The involvement of any other cause does not prevent a finding for the plaintiff, as long as a jury determines that the employer's negligence played any part, no matter how slight, in causing the injury. See Rogers, supra. See generally 5 L. Sand, et al., Modern Federal Jury Instructions, p. 89-44, Instruction 89-22 (1977). Plaintiff, therefore is entitled to recover from the defendant should the jury find from a preponderance of the evidence that the railroad's negligent acts or omissions played any part, even the slightest, in producing his injuries. See Rogers v. Missouri Pacific R.R., 352 U.S. 500 (1957).

Under the FELA, therefore, a railroad worker is entitled to assume that his employer properly discharged its duty to provide him a reasonably safe place to work and that he is not

exposed to any hazards or dangers. See Cazad v. Chesapeake & Ohio Ry., 622 F.2d 72 (4th Cir. 1980); Williams v. Atlantic Coast Line R.R., 190 F.2d 744 (5th Cir. 1951); Pitt v. Pennsylvania R.R., 66 F. Supp. 443 (E.D. Pa. 1946), aff'd, 161 F.2d 733 (3d Cir. 1947). A railroad worker, therefore, is not required to anticipate defects or dangerous conditions of which he has no knowledge. See Tiller v. Atlantic Coast Line R.R., 318 U.S. 54 (1943). Additionally, a railroad worker is also not required to anticipate that a fellow worker will perform his job in an unsafe or negligent manner. See Knierim v. Erie Lackawanna R.R., 424 F.2d 745 (2d Cir. 1970). Nor is a railroader bound to foresee that a fellow worker will perform his job in an unsafe or negligent manner. See Knierim v. Erie Lackawanna R.R., 424 F.2d 745 (2d Cir. 1970). It is, therefore, the railroad which has the burden of establishing by a preponderance of the evidence that the plaintiff was contributorily negligent. See Fashauer v. New Jersey Transit Rail Operations, Inc., 57 F.3d 1269 (3d Cir. 1995). Indeed, a railroad may not avoid liability in an FELA action by asserting that the plaintiff assumed the risk of his employment. See Fashauer v. New Jersey Transit Rail Operations, Inc., 57 F.3d 1269 (3d Cir. 1995). Thus, a jury may not find the plaintiff contributorily negligent based solely on his knowledge or acceptance of a dangerous condition or because he was working at a dangerous job. See Fashauer, supra. This is so even if the hazard or danger was obvious. See Rivera v. Farrell Lines, Inc., 474 F.2d 255 (2d Cir.), cert. denied, 414 U.S. 822 (1973); Hall v. American Steamship Co., 688 F.2d 1062 (6th Cir. 1982); Tolar v. Kinsman Marine Transit Co., 618 F.2d 1193 (6th Cir. 1980); Salem v. United States Lines Co., 293 F.2d 121 (2d Cir. 1961), aff'd in part, rev'd in part, 370 U.S. 31 (1962); Darlington v. National Bulk Carriers, Inc., 157 F.2d 817 (2d Cir. 1946); Pedersen v. Diesel Tankers, Ira. S. Bushey, Inc., 280 F. Supp. 421 (S.D.N.Y. 1967).

Importantly, a jury may impute actual knowledge of a dangerous condition or defect to the railroad if its officers, agents, or employees knew or should have known of the condition. See Gallick v. Baltimore & Ohio R.R., 372 U.S. 108 (1963). It may also impute constructive knowledge of a dangerous condition or defect to the railroad if the evidence reveals that the hazard has existed for a sufficiently long period of time that the defendant, upon reasonable inspection, should have discovered it. See e.g. Baltimore & Ohio R.R. v. Flechtner, 300 F. 318 (6th Cir.), cert. denied, 266 U.S. 613 (1924). In an FELA case, liability may be inferred completely from circumstantial evidence. See Rogers v. Missouri Pacific R.R., 352 U.S. 500 (1957). It may be based exclusively on inferences drawn from the facts and circumstances of the case which, in light of ordinary experience, reasonably suggest that the railroad's negligence played even the slightest part in producing plaintiff's injury. See Henwood v. Coburn, 165 F.2d 418 (8th Cir. 1948).

Based upon the above, it is clear that the central element in any FELA action is whether an injury to a plaintiff resulted in whole or part from the negligence of a railroad or its employees or agents. In other words, did such negligence play any part, even the slightest, in bringing about an injury to the plaintiff? 5 L. Sand, et al., Modern Federal Jury Instructions, Instruction 89-22 (1997).

### b.    Arguments As To Liability

Defendant had a non-delegable duty to provide Plaintiff with a reasonably safe place to work. This accident is the result of the negligence of Defendant and its failure to provide Plaintiff with a safe work place.

Plaintiff's liability expert, George Widas, P.E., C.S.P., reviewed the relevant discovery materials and inspected the defective trap at issue. Plaintiff's Liability Expert, George P. Widas,

P.E., C.S.P., inspected the rail car at issue and determined that due to the manner in which employees are trained, it is necessary for individuals such as Plaintiff to place their foot directly on the area where the non-slip grip tape was absent when boarding Defendant's rail cars. Mr. Widas notes, inter alia, that due to smooth metal that is exposed without the application of the non-slip grip tape, it is inevitable that Defendant's employees will slip when attempting to board Defendant's rail cars. Accordingly, Mr. Widas opines that Defendant's failure to apply the non-slip grip tape to the rail car upon which Plaintiff was working directly caused his injuries.

Accordingly, due to the failures referenced above, Defendant is liable for Plaintiff's injuries pursuant to the FELA.

c.    **Medical Treatment and Pain and Suffering**

As a result of Plaintiff's fall, he suffered a right ankle osteochondritis dissecans with loose body in the subchondral fracture site. Plaintiff was out of work due his injuries from July 22, 2011, to February 17, 1012. On October 14, 2011, Plaintiff underwent right ankle arthroscopy, debridement of the osteochondral defect, and microfracture drilling of subchondral bone talus.

On October 31, 2013, as Plaintiff's recovery from his first surgery was poor and he still had significant residual pain in his ankle, he underwent a right ankle arthroscopy, medial malleolar osteotomy, and repair of the osteochondral lesion with a DeNovo graft. Due to his continuing pain and second surgical intervention, Plaintiff was out of work again from October 28, 2013, to April 7, 2014.

On November 27, 2014, Plaintiff underwent a third surgical procedure as he was still experiencing pain in his right ankle. Specifically, Plaintiff underwent a diagnostic arthroscopy and the removal of screws from his ankle. During this third surgery, Dr. Greisberg found fraying

of the cartilage at the area of the osteochondral lesion with osteophytes and synovitis. As a result of his third surgery, Plaintiff was out of work from November 25, 2014, to April 17, 2015.

Dr. Greisberg opined that Plaintiff is still suffering from posterior tibial tendinitis which is related to altered gate syndrome from the injury and the three surgeries.

### d.    Wage and Economic Losses

As a result of his injury, Plaintiff was out of work for a total of seventeen (17) months. Plaintiff's net lost wages for this period of time is $87,432.36.

Defendant is asserting wage loss lien in the amount of $45,183.36 and a medical lien in the amount of $86,696.31.

**By Defendant:**

This Federal Employer's Liability Act claim arises out of an incident, which took place on July 22, 2011. On that date, Plaintiff Steven Foder was in the course and scope of his employment with Defendant, PATH, when he was injured while attempting to climb onto Defendant's rail car at Journal Square Station, in Jersey City, New Jersey. Plaintiff contends that the lack of anti-slip tape on the edge of the anti-climber caused him to slip and fall. Several PATH employees testified regarding the proper technique to be used when climbing onto a train. Each of them testified that the entire foot should be placed on the anti-climber. More specifically, Astagne Avril, the Chief Operations Examiner, testified that if an individual climbs onto the train as taught, the foot would not be on the edge of the anti-climber. Due to Plaintiff's improper climbing technique, Plaintiff's foot slipped off of the rail car and he fell to the ground.

### a. Federal Employers Liability Act

FELA applies to all common carriers by railroad and their employees engaged in

interstate commerce. 45 U.S.C. §§ 51, *et seq*. Under FELA, a railroad is responsible in damages for the injury of an employee caused by its negligence, however, it does not impose additional obligations on the employer and it "does not make the employer the insurer of the safety of the employees while they are on duty." *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 543 (1994). It differs from a worker's compensation act because it requires a plaintiff to prove fault on the part of the employer. 45 U.S.C. §§ 51, *et seq*. While there is no guarantee of recovery, a plaintiff can recover special damages for past and future lost wages, medical expenses, and general damages for pain and suffering with no statutory limitation. *Central of Georgia R.R. Co. v. Swindle*, 398 S.E.2d 365, *on remand* 402 S.E.2d 806 (1990); *Norfolk & W. Ry. Co. v. Leipelt*, 444 U.S. 490 (1980).

Liability under FELA is predicated upon the law of negligence; to prevail on a claim under FELA a plaintiff must prove that (1) an injury occurred while the plaintiff was working within the scope of his or her employment with the railroad, (2) the employment was in the furtherance of the railroad's interstate transportation business, (3) the employer railroad was negligent, and (4) the employer's negligence played some part in causing the injury for which compensation is sought under the Act. *Green v. River Terminal Ry. Co.*, 763 F.2d 805, 808 (6th Cir. 1985). To meet this burden, plaintiff must prove the traditional common law elements of negligence: duty, breach, foreseeability, and causation. *Stevens v. New Jersey Transit Rail Operations*, 356 N.J.Super. 311, 319 (App. Div. 2003). Speculation, conjecture and possibilities are not enough to prove negligence under FELA. *Id.* at 318.

In order for a plaintiff to meet his burden, he must prove that the defendant breached the duty owed to him by failing to provide a safe working environment if it knew or should have

8

known that it was not acting adequately to protect its employees. *Urie v. Thompson*, 337 U.S. 163, 178 (1949).

### b.   Arguments As To Liability

Plaintiff alleges PATH breached the duty owed to him by (1) failing to use ordinary care to furnish plaintiff with a reasonably safe place to work and to perform the duties of his employment by failing to maintain the subject rail car in reasonably safe condition and free from defects and hazards; and (2) failing to use ordinary care to furnish plaintiff with a reasonably safe place to work and to perform the duties of his employment by requiring plaintiff to perform his assigned job tasks in an area made unsafe due to the presence of defects and hazards; and (3) failing to warn plaintiff of the dangerous and/or hazardous condition of the work area; (4) failing to remedy and/or correct the defective, dangerous and/or hazardous conditions of the subject rail car, as described above, when the defendant knew or should have known that said conditions existed; (5) failing to use ordinary care to service and/or maintain the train in a reasonably safe condition and in a condition free from the presence of defects and hazards; (6) failing to use ordinary care to properly inspect the rail car to ensure that same was in a reasonably safe condition; (7) failing to comply with governmental and/or other applicable safety regulations and/or guidelines concerning the maintenance, operation and/or use of the subject rail car; (8) failing to discover, in the exercise of reasonable care, the defective, dangerous and/or hazardous conditions of the work area and the dangerous working conditions involving the rail car; (9) failing to provide plaintiff with a reasonably safe place to work by requiring plaintiff to perform his job duties in the immediate presence of defective, hazardous, and dangerous conditions, which posed an unreasonable risk of harm to plaintiff; (10) failing to use ordinary care to furnish

plaintiff with a reasonably safe place to work to perform his duties of employment.

Plaintiff has been employed by PATH since 2009. At the time of the accident plaintiff was employed as an engineer. Plaintiff testified that he was trained on basic safety precautions and that he was familiar with the PATH Book of Rules.

A PATH safety rule, in place at the time of plaintiff's accident, required that plaintiff use constant care to prevent injury to himself. An additional safety rule required that plaintiff immediately report any unsafe condition to a supervisor. Plaintiff contends that a lack of anti-slip tape on the 1 ¼ inch edge of the anti-climber created unsafe work conditions. In support of this, plaintiff offers only his own statement and that of his liability expert. In addition, Plaintiff claims that the placement of the grab bars in relation to the end step was unsafe. In support of this, Plaintiff's liability expert cites to FRA standards for side sill-steps. While Plaintiff claims that the lack of anti-slip tape on the edge of the anti-climber created an unreasonably safe work place, this is incorrect. Plaintiff has not cited to any applicable standard that requires the placement of anti-slip tape in that area. With respect to Plaintiff's claims regarding the placement of the grab bars, the regulation cited by plaintiff's expert only applies to side sill steps. The step used by Plaintiff in this case was an end step, rendering the FRA standards inapplicable. Despite the safety rule requiring Plaintiff to report any unsafe condition to a supervisor immediately, plaintiff did not report the lack of anti-slip tape or the alignment of the step and grab bars as unsafe prior to his injury. As such, PATH submits that plaintiff has provided insufficient evidence to demonstrate breach of duty on this allegation.

PATH's liability expert, Augustus F. Ubaldi, P.E., concluded that the PATH car in question was properly inspected and maintained. He noted that while Mr. Widas stated that the

10

grab bars were excessively offset, he failed to give any standard that requires grab bars to be directly above steps.  He also failed to provide calculations for forces necessary for a person to use the climbing system.  Finally, Mr. Ubaldi notes that the vestibule area where plaintiff is supposed to place his foot has diamond plate which pursuant to OSHA is an acceptable walking surface with slip resistant properties.

For the above reasons, the evidence shows that PATH acted adequately to protect its employees, as is the standard. Plaintiff has failed to show that PATH breached the duty of care it owed to its employees.

### b.  Alleged Injuries

Plaintiff was examined on behalf of PATH by Dr. Robert Dennis, an orthopedic surgeon, on October 13, 2015. Upon examination, Dr. Dennis found that Plaintiff's right calf appeared slightly smaller than his left.  Based on his review of the records provided he concluded that plaintiff suffered a right ankle sprain and a disturbance of a right ankle osteochondral preexisting defect. He stated that plaintiff had some residual permanency and that there were some early signs of arthritic changes in the ankle. He concluded that plaintiff reached maximum medial benefit of treatment and that at least some of his ankle issues were preexisting. Dr. Dennis was provided with additional medical records to review, including plaintiff's most recent MRI. Based on the MRI, Dr. Dennis concluded that plaintiff's ankle was in better condition than anticipated.  He stated that the surgeries produced a normal appearing ankle and that the end result was quite excellent.

### c.  Wage and Economic Losses

11

Plaintiff lost 370 work days. PATH paid Plaintiff $45,183.36 in wages during his time missed. Pursuant to statute and the collective bargaining agreement between PATH and Plaintiff's union, PATH is entitled to a set off for the entire amount. Plaintiff is also claiming lost overtime. PATH has paid all of Plaintiff's medical bills which resulted from his alleged injury; a total of $86,696.31. Pursuant to statute and the collective bargaining agreement between PATH and Plaintiff's union, PATH is entitled to a set off for the entire amount.

There is a Railroad Retirement Board Lien of $17,421.84.

**PART II.**      **STIPULATED FACTS:**

1.     Plaintiff, Steven Foder, is twenty-nine years old and was born on November 11, 1986. He resides at 33 Autumn Court, Colonia, New Jersey 07067, at all times material to this alleged incident.

2.     Plaintiff is and was at all times material to this alleged incident an employee of Defendant PATH.

3.     Plaintiff's occupation, on the date of accident, was that of an engineer.

4.     The defendant is a bi-state entity and operates a railroad within the district where this Court is situated.

**PART III.**      **PLAINTIFF'S CONTESTED FACTS:**

Plaintiff intends to prove the following contested fact with regard to liability:

1.     This matter arises out of an alleged injury Plaintiff claims to have sustained on July 22, 2011, while in the employ of Defendant and upon Defendant's train at or near Defendant's Journal Square Train Station.

2.     Plaintiff alleges that he was in the course and scope of his employment and was

attempting to Defendant's rail car when he was injured.

3.     Plaintiff alleges that his accident occurred on rail car number 5678.

4.     Defendant did not provide Plaintiff with a safe workplace.

5.     Plaintiff suffered severe and disabling injuries due to Defendant's failure to provide him with a safe workplace.

6.     Defendant's negligence caused Plaintiff's injuries.

7.     Defendant's failure to properly maintain its equipment caused Plaintiff's injuries.

8.     Defendant violated numerous standards and regulations.

Plaintiff intends to prove the following contested fact with regard to damages:

1.   Plaintiff's injuries were caused by Defendant's negligence.

2.   Plaintiff's injuries are severe, disabling, and permanent.

3.   Plaintiff's medical treatment was reasonable and necessary.

4.   Plaintiff has suffered a significant loss of wages due to  the time he was unable to work.

**PART IV.          DEFENDANT'S CONTESTED FACTS:**

The defendant intends to prove the following contested facts as to liability and damages:

1.   Plaintiff was properly trained, was given proper equipment to perform his job, and was given appropriate safety equipment;

2.   PATH engineers receive on the job training from their supervisors;

3.   PATH engineers are given training on how to properly climb onto PATH train cars;

4.   PATH engineers are trained to maintain three points of contact with the train car at all times;

13

5. PATH engineers are instructed to place their entire foot on the anti-climber when climbing onto a train;

6. PATH engineers are given gloves which comply with any and all regulations to protect their hands and provide grip when climbing;

7. Plaintiff's only assignment on the date in question was to perform the duties of an engineer for a consist of PATH Train Cars, which included Car 5678;

8. Dennis Velez, a Car Inspector on duty the date of this incident, testified that, he inspected PATH Train Car 5678 after plaintiff's alleged incident, found no defects and kept the car in service;

9. There was diamond plate on the surface of the anti-climber;

10. Any and all injuries suffered were due to plaintiff's own negligence and, in the alternative, plaintiff was contributorily negligent in failing to use due care for his own safety;

11. PATH employees are allowed to make a good faith challenge when they believe a job is unsafe.

12. Prior to the job assignment Plaintiff was injured on, he did not make a good faith challenge;

13. Prior to the job Plaintiff was injured on, he did not ask for different gloves;

14. Prior to the job Plaintiff was injured on, he did not raise the issue of anti-slip tape with any supervisor;

15. Plaintiff has returned to work full duty with no restrictions.

**PART V.**          **WITNESS AND SUMMARY OF TESTIMONY**:

14

Only the witnesses whose names and addresses are listed herein will be permitted to testify at the time of trial. For each witness listed, there must be a description of their testimony. Any objection to a witness must be noted by opposing counsel and for each such witness objected to, the name and the reason for the objection shall be given.

A.      Plaintiff's Witness and Summary of Their Testimony

Plaintiff intends to call the following witnesses with regard to liability and anticipates they will testify as follows:

a) **Plaintiff, Steven Foder**:  Plaintiff will testify to, *inter alia*, the events that occurred on or about July 22, 2011, which lead to his injuries.  Plaintiff will also testify regarding the mechanism, extent, and permanency of her physical injuries, as well as his economic injuries.

b)  **Gregory Reich, employee of Defendant**: Mr. Reich will testify regarding, *inter alia*, the incident which lead to Plaintiff's injuries and the investigation into same.

c) **Sandra Bou, Conductor for Defendant**: Ms. Bou will testify regarding, *inter alia*, the incident which lead to Plaintiff's injuries.  Ms. Bou will also testify about the responsibilities and duties of Plaintiff's co-workers on the date of the accident.

d) **Dennis Velez, employee of Defendant**:  Mr. Velez will testify regarding, *inter alia*, the various inspections and the routine maintenance that are applicable rail car at issue.  Mr. Velez will also testify about the responsibilities and duties of Plaintiff's co-workers on the date of the accident.

e)  **Astange Avril, employee of Defendant**:  Mr. Avril will testify about the responsibilities and duties of Plaintiff's co-workers on the date of the accident.

15

f) **Kenneth S. Wallace, employee of Defendant:** Mr. Wallace will testify regarding, *inter alia*, the various inspections and the routine maintenance that are applicable rail car at issue. Mr. Wallace will also testify about the responsibilities and duties of Plaintiff's co-workers on the date of the accident.

g) **Representative and/or Records Custodian from Edison-Metuchen Orthopaedic Group:** This witness will testify to the mechanism, causation, condition, and permanency of Plaintiff's injuries which are at issue in this matter.

h) **Representative and/or Records Custodian from PATH Medical:** This witness will testify to the mechanism, causation, condition, and permanency of Plaintiff's injuries which are at issue in this matter.

i) **Representative and/or Records Custodian from Jersey City Medical:** This witness will testify to the mechanism, causation, condition, and permanency of Plaintiff's injuries which are at issue in this matter.

j) **Dr. Wayne S. Berberian:** This witness will testify to the mechanism, causation, condition, and permanency of Plaintiff's injuries which are at issue in this matter.

k) Any witness listed by Defendant.

B.   <u>Defendant's Objections to Plaintiff's Witnesses</u>: None.

C.   <u>Defendant's Witnesses and Summary of Their Testimony</u>

1.   Dennis Velez: PATH Car Inspector: intends to testify regarding his inspection of PATH Train Car 5678 immediately after Plaintiff's alleged incident.

2.   Astagne Avril: PATH Chief Operations Examiner: intends to testify regarding the

16

specific and general training received by Engineers, the applicable regulations and rules pertaining to Engineers and the work they perform, and the Personal Protective Equipment given and/or available to PATH workers, the reason(s) specific equipment is ordered, and the rules/regulations applicable to the equipment and/or Personal Protective Equipment given to Trackmen.

3.    Carl Lupia: PATH Operations Examiner: Mr. Lupia was Plaintiff's foreman on the date in question and will testify as to what he witnessed on the evening in question and as to any relevant and admissible information contained in the section of the Occupational Injury Report that Mr. Lupia filled out and signed.

4.    Sandra Bou: PATH Conductor: will testify regarding the condition of the area around S-1 Track and of PATH Train Car 5678 on the date in question.

5.    Kenneth Wallace: Supervisor, Car Equipment Division: will testify regarding the inspection of PATH Train Cars.

6.    Gregory Reich, PATH Engineer: will testify regarding the counseling provided to plaintiff after his injury.

7.    Karl Lunan, Port Authority Employee:  will testify regarding the amount paid to plaintiff in wages during his time out from work and the amount paid in medical expenses.

8.    Rhonda Whitley, PATH Medical:  Dr. Whitley will testify regarding Plaintiff's treatment and PATH Medical's assessment of Plaintiff's physical condition

D.    Plaintiff's Objections to Defendant's Witnesses:

If there are no objections to any of the witnesses, plaintiff shall so state that in this

17

portion of the Order. If there are objections to any of defendant's witnesses, they shall be listed here: None.

PART VI.          EXPERT WITNESSES:

1.        Plaintiff's expert witness are:

> a. George P. Widas, PE, CSP, CXLT, Consulting Engineer; 15 Glen Lake Drive, Medford, New Jersey 08055.
>
> b. Justin Greisberg, MD; 622 W. 168th St., PH11-1153, New York, NY 10032

2.        Defendant's objection to the qualifications of plaintiff's expert witnesses are: Defendant objects to the qualification of George P. Widas as an expert. Mr. Widas' expert report is a net opinion and he should be precluded from testifying. Defendant will more fully explain its objection in a <u>Daubert</u> motion made prior to the time of trial.

3.        Defendant's expert witnesses are:

> Augustus F. Ubaldi, P.E., 26614 Fairfax Lane North Olmsted, Ohio 44070
>
> Robert Dennis, M.D., P.A, 2040 Sixth Avenue, Neptune, NJ 07753

4.        Plaintiff's objection to the qualifications of defendant's expert witnesses are: None at this time.

PART VII.          EXHIBITS

Plaintiff's Exhibits

1.        Plaintiff's Complaints

18

2.      Defendant's Answer

3.      Plaintiff's Discovery Requests

4.      Defendant's Discovery Responses and Document Production

5.      Expert Report and Pictures of George P. Widas

6.      C.V. Of George P. Widas

7.      Expert Report of Dr. Justin Greisberg

8.      C.V. of Dr. Justin Greisberg

9.      Medical Records of PATH

10.    Medical Records of Dr. Ronda Whitley

11.    Medical Records of Dr. Justin Greisberg

12.    Medical Records of Dr. Wayne S. Berberian

13.    Medical Records of Edison-Metuchen Orthopaedic Group

14.    Medical Records of Dr. Joseph Lombardi

15.    Medical Records of Menlo Park MRI Center

16.    Medical Records of Twin Boro Physical Therapy

17.    Medical Records of Kessler Rehabilitation Center

18.    Medical Records of Jersey Medical Center

19.    Wage Records and Pay Stubs of Plaintiff

20.    Transportation Division Unusual Occurrence Report dated July 22, 2011

21.    Memorandum of Carl Lupia dated July 22, 2011

22.    PATH Employee Occupational Injury Report dated July 22, 2011

23.    Pictures of Railcar 5678

24.    Pictures of Anti-climber with and without non-slip grip tape

25.    Deposition transcript of Steven Foder

26.    Deposition transcript of Dennis Velez

27.    Deposition transcript of Kenneth S. Wallace

28.    Deposition transcript of Sandra Bou

29.    Deposition transcript of Astange Avril

30.    Deposition transcript of Gregory Reich

31.    Any exhibits listed by Defendant

Defendant objects to the introduction of Plaintiff's exhibit (set forth number of exhibit and grounds for objection):

1.    Plaintiff's Complaints – *no objection*

2.    Defendant's Answer – *no objection*

3.    Plaintiff's Discovery Requests – *Defendant objects to its relevance*

4.    Defendant's Discovery Responses and Document Production – *Defendant objects to any records that are hearsay or are not based upon personal knowledge*

5.    Expert Report and Pictures of George P. Widas – *Defendant objects to any records that are hearsay or are not based upon personal knowledge. Defendant further objects to the photographs attached to the report of George P. Widas on the grounds that they depict subsequent remedial repairs.*

6.    C.V. Of George P. Widas – *no objection*

7.    Expert Report of Dr. Justin Greisberg – *Defendant objects to any records or statements that are hearsay, that are not based upon personal knowledge and that were not relied upon by Dr. Greisberg in formulating his report.*

8.    C.V. of Dr. Justin Greisberg – *no objection*

9.    Medical Records of PATH – *no objection*

10.   Medical Records of Dr. Ronda Whitley – *no objection*

11.   Medical Records of Dr. Justin Greisberg – *Defendant objects to any records or statements that are hearsay, that are not based upon personal knowledge and that were not relied upon by Plaintiff's treating physician.*

12.   Medical Records of. Dr. Wayne S. Berberian – *Defendant objects to any records or statements that are hearsay, that are not based upon personal knowledge and that were not relied upon by Plaintiff's treating physician.*

13.   Medical Records of Edison-Metuchen Orthopaedic Group – *Defendant objects to any records or statements that are hearsay, that are not based upon personal knowledge and that were not relied upon by Plaintiff's treating physician.*

14.   Medical Records of Dr. Joseph Lombardi – *Defendant objects to any records or statements that are hearsay, that are not based upon personal knowledge and that were not relied upon by Plaintiff's treating physician.*

15.   Medical Records of Menlo Park MRI Center – *Defendant objects to any records or statements that are hearsay, that are not based upon personal knowledge and that were not relied upon by Plaintiff's treating physician.*

16.   Medical Records of Twin Boro Physical Therapy – *Defendant objects to any*

21

records or statements that are hearsay, that are not based upon personal knowledge and that were not relied upon by Plaintiff's treating physician.

17.     Medical Records of Kessler Rehabilitation Center – *Defendant objects to any records or statements that are hearsay, that are not based upon personal knowledge and that were not relied upon by Plaintiff's treating physician.*

18.     Medical Records of Jersey Medical Center – *Defendant objects to any records or statements that are hearsay, that are not based upon personal knowledge and that were not relied upon by Plaintiff's treating physician.*

19.     Wage Records and Pay Stubs of Plaintiff – *no objection*

20.     Transportation Division Unusual Occurrence Report dated July 22, 2011 – *Defendant objects to any hearsay and opinion testimony contained therein that is not based upon personal knowledge.*

21.     Memorandum of Carl Lupia dated July 22, 2011 – *no objection*

22.     PATH Employee Occupational Injury Report dated July 22, 2011 – *Defendant objects to any hearsay and opinion testimony contained therein that is not based upon personal knowledge.*

23.     Pictures of Railcar 5678 – *defendant objects on grounds of authenticity and that the photographs might depict evidence of subsequent remedial repairs.*

24.     Pictures of Anti-climber with and without non-slip grip tape– *defendant objects on grounds of authenticity and that the photographs might depict evidence of subsequent remedial repairs.*

25.     Deposition transcript of Steven Foder – *no objection*

26.      Deposition transcript of Dennis Velez– *no objection*

27.      Deposition transcript of Kenneth S. Wallace– *no objection*

28.      Deposition transcript of Sandra Bou– *no objection*

29.      Deposition transcript of Astange Avril– *no objection*

30.      Deposition transcript of Gregory Reich– *no objection*

Defendant's Exhibits

1.      Plaintiff's PATH Medical File;

2.      Plaintiff's PATH Personnel File;

3.      Photograph of gloves provided to engineers and/or exemplar gloves provided to engineers;

4.      Memorandum from Carl Lupia to Astagne Avril, dated July 22, 2011;

5.      Photographs taken by Augustus Ubaldi during his site visit;

6.      Employee Occupational Injury Report, dated July 22, 2011;

7.      Transportation Division Unusual Occurrence Report, dated July 22, 2011;

8.      Daily Inspection Reports for PATH Train Car 5678;

9.      PATH Time and Labor Reports;

10.      PATH Book of Rules;

11.      PATH and Brotherhood of Locomotive Engineers Agreement;

12.      Curriculum Vitae of Dr. Robert Dennis, Orthopedic Surgeon;

23

13.  October 13, 2015, Expert Report of Independent Medical Examiner Dr. Robert Dennis;

14.  December 22, 2015, Addendum Expert Report of Independent Medical Examiner Dr. Robert Dennis;

15.  Curriculum Vitae of Augustus F. Ubaldi, P.E.;

16.  February 24, 2016 Expert Report of Liability Expert Augustus F. Ubaldi.

Plaintiff objects to the introduction of defendant's exhibit (set forth number of exhibit and grounds for objection): None.

## PART VIII.        TRIAL BRIEF

Each side shall submit to the judge and to opposing counsel a trial brief or memorandum

in accordance with Local Civil Rule 7.2, with citations to authorities and arguments in support

of its position on all disputed issues of law within forty-five (45) days of trial.

## PART IX.        JURY INSTRUCTIONS

The parties are required to confer and submit a combined draft of the proposed jury

instructions, including columns indicating disagreements, within forty-five (45) days of trial.

## PART X.        MOTIONS AND TRIAL BRIEFS

*As discussed, parties are to meet and confer to obviate the following motions to extent possible.*

All pre-trial motions, including Daubert and In Limine motions, shall be fully briefed and *by August 5, 2016 (moving briefs), with answering briefs* filed ~~no later than forty-five (45) days prior to trial.~~ *due on August 19, 2016. The motions will be heard by the Court on 9/14/16.*

### Plaintiff's Motions In Limine

Motion in Limine to Preclude the Introduction of Collateral Source Benefits at the Time

of Trial.

### Defendant's Motions in Limine

**Plaintiff's Expert, George P. Widas, should be precluded from testifying or in the alternative has his testimony limited because his opinions do not meet the *Daubert* standard.**

Pursuant to *Daubert* and its progeny a testifying expert's opinion should be precluded

when the testimony's basis, data, principles, methods or application are sufficiently called in to

question. Here, Plaintiff's liability expert, George P. Widas, offers numerous conclusions that are

either unsupported by citation to relevant standards or which rely on inapplicable standards.  For

example, Mr. Widas concludes that the grab-bars are excessively offset from the end-step, but fails to provides information regarding how he came to such a conclusion or what standard was relied on to determine that the offset was "excessive". Mr. Widas also refers to standards for sill-steps throughout the report, however, a sill-step is not at issue in this matter. Because of this Mr. Widas' conclusions are merely personal opinions and he should be precluded from testifying in this matter.

**Plaintiff should be precluded from introducing safer alternative methods of performing his job tasks and from introducing safer alternatives with respect to anti-climbers or grab-bar and end-step alignment.**

The case law is clear that a railroad employer is neither required to furnish its employees with the latest, best, or most perfect appliance with which to work, nor to discard reasonably safe and suitable appliances already in use, even though later improvements have been discovered. Just because there may have been a different, or safer method of work is irrelevant and does not automatically render the chosen method unsafe or negligent for purposes of FELA. Therefore, Plaintiff should not be permitted to introduce evidence regarding safer alternative methods and should be limited to presenting evidence regarding whether the chosen method was safe.

**Plaintiff should be precluded from introducing evidence of subsequent remedial repairs made to PATH car 5678**

Defendant objects to any and all evidence of subsequent remedial repairs. Specifically, Defendant objects to any evidence regarding the placement of anti-slip tape on PATH car 5678 or any PATH car after July 22, 2011. Pursuant to FRE 407subsequent measures are not admissible to prove negligence, culpable, conduct or defect in design. Here, there is no dispute that anti-slip tape was placed on PATH car 5678 and other PATH cars at some point after Plaintiff's injury.Any and all evidence, including photographs, of placement of such tape should

be inadmissible.

### Plaintiff should be precluded from introducing evidence that workers' compensation benefits are not available to FELA employees

Plaintiff's counsel must not be allowed to mention or introduce evidence that FELA employees do not get workers' compensation benefits.   In *Stillman v. Norfolk & Western Railway Company*, the court held that plaintiff's "ineligibility for workers' compensation benefits was completely irrelevant to the issues presented in this case, and allowing the jury to consider such information could have prejudiced the Railroad." *See Stillman*, <u>811 F.2d</u> 834, 838 (4th Cir. 1987); *see also Weinell v. McKeesport Connecting Railroad Co.*, 411 <u>F2d</u> 510, 512 (3d Cir. 969) (statement was obviously improper and should not have been made) and *Kansas City Southern Railroad Co. v. Stokes*, 20 S.W.3d. 45, 49 (2000) (jury instruction improper and required a reversal of case). Therefore, Plaintiff's counsel should not be permitted to mention the unavailability of workers' compensation.

### Evidence of Plaintiff's lost wages and lost overtime should be presented using after-tax figures

Plaintiff is claiming lost wages and lost overtime in this matter. Pursuant to *Norfolk & W. Ry. Co. v. Liepelt*, 444 U.S. 490 (1980), evidence of Plaintiff's lost wages and lost overtime should be presented using after-tax figures.   Therefore, any evidence present by plaintiff of lost wages or lost over time should be in after-tax figures.

### Defendant is entitled to a setoff for the money it has paid to plaintiff on account of his injury on duty and for the amount paid in medical expenses regard less of the percentage of comparative negligence attributed to PATH

FELA contains a setoff enabling statute 45 USCA 55. The purpose of this setoff provision in FELA is to prevent imposition upon the employer of double liability for one loss.  In addition,

various casessuggest that PATH is entitled to a full setoff in the amount it paid in wage and medical benefits, irrespective of the negligence attributed to PATH. Further, both the Occupational Injury Report and the collective bargaining agreement with Plaintiff's union give PATH the right to take a lien for amounts paid as a result of Plaintiff's injury and manifest PATH's intent to indemnify itself from liability. Therefore, PATH is entitled to a full, dollar-for-dollar setoff of its wage and medical liens.

### The jury should not be presented with evidence of PATH's payment of benefits or amount of setoff

Pursuant to *Clark v. Nat'l R.R. Passenger Corp.,* 654 F.Supp. 376, 378 (D.D.C. 1987) and *Muzzleman v. Nat'l Rail Passenger Corp.*, 839 F. Supp. 1094 (D. Del. 1993), the payment of benefits to Plaintiff should not be introduced into evidence because it will penalize PATH for attempting to indemnify itself against liability. The same reasons which prohibit introduction of these payments underlie the admissibility of collateral source payments and offers of settlement: PATH has chosen to indemnify itself against liability under 45 USCA 55. Accordingly, Plaintiff should not be permitted to introduce into evidence any medical expense or lost wage payments which have been paid by PATH. Rather, these amounts should be stipulated to and deducted in accordance with the appropriate setoff that PATH is entitled to under 45 USCA 55.

### If PATH stipulates to the amount of lost wages and medical expenses, those amounts should not be put in front of the jury.

If PATH and Plaintiff stipulate to the amount of lost wages, medical expense and PATH liens for set off, these numbers should not be put in front of the jury. Because the amounts are stipulated to, there is nothing for the jury to decide or award. These numbers are irrelevant and would only prejudice PATH.

28

e.   **Any jury award should reimburse the Railroad Retirement Board for the lien it has against Plaintiff for the supplementary sickness benefits it provided to him.**

Plaintiff received money from the Railroad Retirement Board ("RRB") in the form of supplemental sickness benefits. The RRB must pay sickness benefits without regard for liability of any person to pay damages for the underlying sickness or injury. The RRB is entitled to reimbursement from any damages payable or paid to the employee by a person liable for the same injury. Therefore, the RRB should be reimbursed for the benefits paid to Plaintiff in this matter form any jury award.

**PART XI.**           **ESTIMATED LENGTH OF TRIAL**

Approximately 3

~~Five (5)~~ days for liability and ~~three (3) days~~ one day for damages.

**PART XII.**           **TRIAL DATE**

This matter shall proceed to trial on the 20th day of September, 2016.

29

## CONCLUDING CERTIFICATION

We hereby certify by the affixing of our signature to this Final Pretrial Order that it reflects the efforts of all counsel and that we have carefully and completely reviewed all parts of this Order prior to its submission to the court. Further, it is acknowledged that amendments to manifest injustice would result if the amendment is not allowed.

Attorney(s) for Plaintiff(s):

Attorney(s) for Defendant(s)

Anthony M. DiGiulio, Esquire

Nicholas Mino, Esquire

_____

_____/S/_____

Entry of the forgoing Joint Final Pretrial Order is hereby APPROVED this _12th_ day of ____July____, 2016.

LEDA DUNN WETTRE
UNITED STATES MAGISTRATE JUDGE
United States District Court For the District of New Jersey

30