1              IN THE UNITED STATES DISTRICT COURT

2                FOR THE DISTRICT OF NEW JERSEY

3

4   STEVEN FODER,                :        Civil No.
                                          14-cv-3935-MCA
5                Plaintiff,      :
                                          TRANSCRIPT OF
6            v.                  :        TRIAL PROCEEDINGS

7   PORT AUTHORITY TRANS HUDSON  :            VOLUME 4
    CORPORATION,
8                                :
                Defendant.
9   -------------------------------x

10

11                                    Newark, New Jersey
                                      November 17, 2016

12

13

14

    BEFORE:
15
              THE HON. MADELINE COX ARLEO, U.S.D.J.
16

17

18                                    Reported by:
                                      CHARLES P. McGUIRE, C.C.R.
19                                    Official Court Reporter

20

21

            Pursuant to Section 753, Title 28, United States
22      Code, the following transcript is certified to be
        an accurate record as taken stenographically in
23      the above entitled proceedings.

24
                        s/CHARLES P. McGUIRE, C.C.R.
25


                      CHARLES P. McGUIRE, C.C.R.

621

1    **APPEARANCES:**

2         **BARISH ROSENTHAL**
          **1717 Arch Street**
3         **Philadelphia, PA 19067**
          **BY: SAMUEL J. ROSENTHAL, ESQ., and**
4             **ANTHONY M. DiGIULIO, ESQ.**
          **Attorneys for Plaintiff**
5
          **NICHOLAS MINO, ESQUIRE**
6         **150 Greenwich Street**
          **New York, New York 10007**
7         **Attorney for Defendant**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (Jury out)

2                THE COURT CLERK:  All rise.

3                THE COURT:  Good morning, everybody.  Everybody

4     rested and ready?

5                MR. ROSENTHAL:  We are ready, Your Honor.

6          (Laughter)

7          (Off the record discussion)

8                MR. MINO:  Before we bring the jury in, Your

9     Honor, the next witness is Gus Ubaldi.  My binder did not

10    include his report.  I was going to give you a copy for

11    reference.

12               THE COURT:  Yes, sure.  Come on up.

13               MR. MINO:  Thank you.

14               THE COURT:  Any other questions?

15               THE COURT CLERK:  Bring them in?

16               MR. ROSENTHAL:  No other questions from Plaintiff,

17    Your Honor.

18               MR. MINO:  No questions from Defendant.

19               THE COURT:  Was this gentleman's deposition taken?

20               MR. ROSENTHAL:  No.

21               THE COURT:  So there will be all kinds of

22    surprises.

23               MR. MINO:  It's going to be a fun morning.

24               THE COURT:  Yes.  All mornings here are fun.

25          (Laughter)

1          MR. ROSENTHAL:  Mr. Widas's demonstrative exhibit,

2     which is Court Exhibit 3, is in the jury room.

3          THE COURT:  In the jury room?

4          MR. ROSENTHAL:  No, no --

5          THE COURT:  Okay.  Thank you.

6          THE COURT CLERK:  All rise.

7      (The jury enters)

8          THE COURT:  Good morning, everyone.  Welcome back.

9           Do you have an extra copy of this report that was

10    handed to me?

11         MR. MINO:  Sure.

12         THE COURT:  Give one to Alex, if you don't mind.

13         Thank you.

14         MR. MINO:  Anyone else?

15         THE COURT:  No, we're good.

16         All right.  Want to proceed?

17         MR. MINO:  Sure.

18         At this time, Defendant calls Augustus Ubaldi.

19         THE COURT CLERK:  You can just go right up.

20         Sir, if you can raise your right hand, place your

21    left hand on the bible, please.

22    A U G U S T I N E   U B A L D I, called as a witness on

23    behalf of the Defendant, and having been duly sworn,

24    testified as follows:

25         THE COURT CLERK:  Please state your full name for

CHARLES P. McGUIRE, C.C.R.

1        the record and spell it, please.

2                    THE WITNESS:  Full name is Augustine,

3        A-u-g-u-s-t-i-n-e, middle initial F, last name is Ubaldi,

4        U-b-, as in boy, -a-l-d-, as in David, -i.

5                        DIRECT EXAMINATION

6        BY MR. MINO:

7        Q.    Good morning, Mr. Ubaldi.  How are you?

8        A.    Outstanding.

9        Q.    All right.  Are you currently employed?

10       A.    Yes, sir.

11       Q.    What's your current job?

12       A.    I am an independent consultant with Robson Forensic,

13       and they are a firm that does expert witness work.

14       Q.    Okay.  And what type of matters do you consult on?

15       A.    I consult in matters regarding railroads and airports.

16       Q.    Okay.  And can you give the jury the benefit of your

17       educational background?

18       A.    Certainly.

19                    I have a Bachelor of Science degree in civil

20       engineering from Syracuse University.

21       Q.    Okay.  And have you ever worked for a railroad?

22       A.    Yes.  I started my career 46 years ago with the Penn

23       Central Railroad.  After leaving there, I spent time in

24       Washington, D. C., for a private engineering company

25       designing the Washington, D. C. subway, and then I went to

1    work for the Greater Cleveland Regional Transit Authority,

2    the transit authority in Cleveland, Ohio.

3              I also volunteer with the Cuyahoga Valley Scenic

4    Railroad, which runs through the middle of the Cuyahoga

5    Valley National Park, also in Cleveland, and I am a

6    trainman, a brakeman, and a track inspector for them.

7    Q.    Okay.  And are you a certified engineer?

8    A.    No, I am not a certified engineer.  I'm a certified

9    brakeman.

10   Q.    Okay.  But as far as a civil engineer.

11   A.    Oh, I am sorry.  Yes, I am a licensed professional

12   engineer in nine states and the District of Columbia.

13             I am also a member of the American Railway

14   Engineering and Maintenance of Way Association, the American

15   Society of Civil Engineers.  I am an authorized volunteer

16   for Operation Lifesaver, which is a national nonprofit

17   organization that works to reduce accidents, injuries, and

18   fatalities on and about grade crossings and on railroad

19   tracks.

20             I am adjunct faculty at Cuyahoga Community

21   College, and I teach -- which is also in Cleveland, teaching

22   in the construction engineering technology program.

23             And in my volunteer duties with Cuyahoga Valley

24   Scenic Railroad, I also advise the Park Service, who owns

25   the tracks, on track rehabilitation, and conduct annual

1      recurrent training in Code of Federal Regulations Part 214,

2      which is about roadway worker on-track safety.

3      Q.    Okay.  And does any of your work include testifying in

4      legal matters?

5      A.    Yes, it does.

6      Q.    Okay.  How much?

7      A.    All the work -- all the work that I do for Robson.

8      Q.    And you testify for Plaintiffs, or Defendants, a mix?

9      A.    It's a mix.  It's about 60-40 Plaintiff-Defendant.

10     Q.    Okay, and can you just talk a little bit more about

11     the work that you do for Robson?

12     A.    Well, I will do work concerning grade crossings.  If

13     there's an accident at a grade crossing, someone gets hit,

14     did the grade crossing have the proper protection; did the

15     motorist follow all the proper procedures?

16          I have done various employee injury cases that

17     have to do with either operating or track issues.

18          I have done a number of airport cases.  One

19     involved an international airport where there was a question

20     of whether the runway had been properly designed.

21          It can be pretty eclectic.

22     Q.    And in your work, either on the railroad or with

23     Robson, have you become familiar with the Federal Railroad

24     Administration?

25     A.    Yes, I have.

1    Q.    And just explain to the jury what that is.

2    A.    The Federal Railroad Administration is a Federal

3    agency that is charged with overseeing railroads that make

4    sure they provide -- that they follow the regulations.  For

5    example, there is another Federal regulation, number -- Part

6    213, which has to do with track safety standards, and I

7    follow that when I do my track inspections, and

8    periodically, an FRA track safety inspector will ride with

9    me just to see that our railroad is doing the proper things

10   in keeping the track safe.

11   Q.    And are you being paid for your time today?

12   A.    Yes, I am.

13   Q.    How much?

14   A.    I forget what the actual billing rate is.  It's about

15   $400 an hour.

16   Q.    And did there come a time when you were retained by

17   PATH to write a report?

18   A.    Yes.

19   Q.    Okay.  And in that report, did you review any

20   materials in writing that report?

21   A.    Yes, I did.

22   Q.    And what did you review?

23   A.    I reviewed the Employee Occupational Injury Report,

24   the Unusual Occurrence Report, the Plaintiff's Summons and

25   Complaint, PATH's Answer, Plaintiff's initial disclosures,

1     PATH's initial disclosures, Plaintiff's response to document

2     demands, Plaintiff's response to interrogatories, PATH's

3     response to discovery demands, PATH's responses to

4     interrogatories, depositions of Steven Foder, Sandra Bou,

5     Dennis Velez, Gregory Reich, Astagne Avril, Kenneth Wallace,

6     I looked over the report of George Widas and photographs

7     taken by George Widas, and I also conducted a site

8     inspection on February 16th of this year.

9     Q.    Have you previously been called to testify as an

10    expert in state and Federal Courts?

11    A.    Yes, I have.

12    Q.    Okay.

13          MR. MINO:  Your Honor, at this time, I would like

14    to offer Augustine Ubaldi as an expert.

15          THE COURT:  Any objection?

16          MR. ROSENTHAL:  Can I ask some questions?

17          THE COURT:  Sure.

18          MR. ROSENTHAL:  Thank you, Your Honor.

19                        VOIR DIRE

20    BY MR. ROSENTHAL:

21    Q.    Mr. Ubaldi, have you and I ever met before?

22    A.    No.

23    Q.    Good, because I don't remember meeting you, either.

24          (Laughter)

25    Q.    Your CV lists your areas of expertise.  Track

CHARLES P. McGUIRE, C.C.R.

1      structure design?

2      A.    Yes.

3      Q.    Is this a case about track structure design?

4      A.    No, it is not.

5      Q.    Station repair, yard track improvement, bridge repair?

6      A.    No.

7      Q.    Now, you are familiar with the FRA rules on Subpart

8      213?

9      A.    Yes.

10     Q.    Track Inspection and Supervision?

11     A.    Yes.

12     Q.    Is this case involving that?

13     A.    No.

14     Q.    You mentioned 214, Roadway Worker.

15     A.    Yes.

16     Q.    Does this case involve that?

17     A.    No.

18     Q.    You're qualified in rail radio procedures?

19     A.    Yes.

20     Q.    Is this case about that?

21     A.    No.

22     Q.    You have a lot of background in rail-highway grade

23     crossing safety and design.  Is this case about that?

24     A.    No.

25     Q.    Railway signaling concepts; is this case about that?

1    A.    No.

2    Q.    Time, distance and speed investigations involving rail

3    operations; is this case about that?

4    A.    No.

5    Q.    Derailment inspection; is this case about that?

6    A.    No.

7    Q.    And half of your work has been in the airport area?

8    A.    I don't know if -- I don't have a number of what half

9    my work is.  Those are the two areas of expertise that I

10   have.

11   Q.    Okay.  But this case is just on the railroad side?

12   A.    Correct.

13   Q.    Now, you're knowledgeable about the rules that guide

14   conductors in how to work?  You're a certified conductor?

15   A.    I'm not a certified conductor.  I'm a certified

16   brakeman.

17   Q.    Okay, you're a certified brakeman, not a certified

18   conductor; correct?

19   A.    Correct.

20   Q.    Not a certified engineer.

21   A.    No.

22   Q.    And you're certified as a brakeman for the Scenic

23   Railroad in Cuyahoga Valley?

24   A.    That is correct.

25   Q.    You're a volunteer for them?

1    A.    That is correct.

2    Q.    And are you qualified to maintain or inspect railroad

3    equipment?

4    A.    No.

5    Q.    Are you qualified to operate railroad equipment?

6    A.    Yes.

7    Q.    To operate from the perspective of a brakeman?

8    A.    Yes.

9    Q.    Can you operate a train as an engineer would?

10   A.    No.

11   Q.    So you're here to testify in your capacity as a

12   qualified brakeman?

13   A.    Yes, and knowledgeable of railroad operating rules.

14   Q.    Okay.  But you're not here to testify about the

15   inspection and maintenance and all that.  You have no -- do

16   you have expertise in that?

17   A.    I have expertise in what the rules say.  I have

18   expertise in operating around -- around equipment and

19   following the rules.  For example, as a brakeman or a

20   trainman, I'm climbing locomotives, I'm climbing rail cars.

21   As a track inspector, I'm climbing a specially equipped

22   pickup truck that rides on the track.

23   Q.    But in term of inspection and maintenance of rail

24   cars, that is not your area of expertise; correct?

25   A.    I do not do inspection of rail cars.

CHARLES P. McGUIRE, C.C.R.

1            MR. ROSENTHAL:  We have no objection to the

2    witness.

3            THE COURT:  You've asked to have him qualified as

4    a witness in what area?

5            MR. MINO:  He was qualified as a railroad expert.

6            THE COURT:  What does that mean?  I mean, that

7    could be from engines to -- I'm looking at his report, and I

8    don't see any -- I'm looking at his expert report.  I'm not

9    sure what you're trying to qualify him as.  It needs to be

10   narrow.  It can't just be as a railroad expert.

11           MR. ROSENTHAL:  I would ask that he be confined to

12   the areas where he testified he has expertise.

13           THE COURT:  I don't know what that means.  He said

14   something here, and then what he's talking about in his

15   report is a little bit broader.

16           Why don't we talk at sidebar for a minute?

17           MR. MINO:  Sure.

18       (The following takes place at sidebar)

19           THE COURT:  Okay.  So what I'm concerned about is,

20   I looked at his conclusions, and he talks about, you know,

21   PATH inspected the car, PATH required safety regulations.  I

22   don't think -- there are cases about they didn't comply with

23   safety regulations in terms of the Federal regulations that

24   the lay witnesses said.  But as I understand your cases,

25   that those are the minimum, but to make it safe, they had to

1    have these other safety features, like the grip tape, which

2    was to prevent a fall, and the bar needed to be right on top

3    of it.  That's the whole case.

4              So I don't see what his expertise -- is he opining

5    on that?

6              MR. MINO:  Yes, because there are no regulations

7    that require placement of grip tape, which he will say.

8    He's familiar with the safety regulations --

9              THE COURT:  Right.

10             MR. MINO:  -- the safety regulations that

11   Mr. Widas says requires the bar to be directly above it.  He

12   will testify it does not.

13             THE COURT:  Okay.  So then he can testify to that,

14   but can he testify that you don't need to have the grip tape

15   and you don't need to have the bar at symmetrical?  Because

16   that is -- it's almost as if he's been qualified as a legal

17   expert on regulations, and I'm not sure that that's a proper

18   scope of testimony that he can testify that -- I guess

19   broadly speaking we could have him testify that they

20   properly complied with the Federal OSHA regulations.  That's

21   not in dispute here.  They never challenged that PATH

22   complied with the Federal regulations.

23             MR. ROSENTHAL:  The FRA regulations.

24             THE COURT:  FRA.  No one's disputing that.  It's

25   not an issue in this case.  What's at issue in this case is

CHARLES P. McGUIRE, C.C.R.

1    whether they should have done more than the minimum per the

2    FRA.  That's the whole case.

3             So their expert said the amalgamation of all of

4    these other regulations requires and in my expert opinion

5    requires a safety grip tape and the bar being symmetrical.

6    He never said that they were not in compliance with binding

7    regulations.

8             MR. MINO:  No, what he testified to was, I looked

9    at the FRA and I understand -- I'm not saying that they

10   didn't comply with binding regulations, but based on this,

11   they should have done that.  Based on this regulation, which

12   I get doesn't 100-percent apply, but I'm still going to say

13   that they should have done what this regulation says.

14            THE COURT:  Yes.  So is that all he's going to

15   testify to?  Because I don't see him as an expert to respond

16   to Widas's opinion that grip tape would have made it safer.

17   That's it.  Is what you had safe?  Widas never disputed -- I

18   mean, no witness in this case has ever disputed, you

19   absolutely didn't need the grip tape, it would have caused

20   more problems.  The witnesses sort of danced around the

21   issue:  We think our train is safe, and we complied with

22   regulations, and therefore, it was safe.  Okay?  If he's

23   going to say, we complied with regulations and it was safe,

24   I'll let him do that; but the real issue is, is he going to

25   talk about the grip tape and the bar, independent of

1    regulations?

2             MR. MINO:  What he will -- you mean to say that

3    the area -- the bare metal edge area didn't need the grip

4    tape.  That's what he will say, yes.

5             THE COURT:  Because?

6             MR. MINO:  Because it wasn't required anywhere.

7             MR. ROSENTHAL:  That's what the judge is saying.

8             THE COURT:  That's my point.  What's his

9    expertise, then?  So -- because his --

10            MR. ROSENTHAL:  That's not disputed.

11            THE COURT:  It's not disputed.  His expert didn't

12   say it's absolutely required.

13            MR. MINO:  No, he did say it was required.

14            THE COURT:  No, he didn't.  He didn't.  He said

15   other regulations in other contexts require it.  This is not

16   negligence per se.  This isn't that they had a regulation

17   and they didn't comply with it.  He said, well, if I look at

18   other contexts that don't apply here, they require grip

19   tape, and I think in my expertise as a safety engineer that

20   grip tape would have been -- the car was not safe without

21   grip tape.  That's really what he said.

22            So this guy is just going to talk about

23   regulations.  There's a fine line when you're talking about

24   regulations and him opining on, you didn't need the grip

25   tape, because I don't think it's a safety -- someone

CHARLES P. McGUIRE, C.C.R.

1      qualified in safety engineering to say, you really didn't

2      need grip tape; as long as you put your foot straight down

3      on the surface, it's perfectly fine, it's reasonable, it's

4      compliant with law.  But does he even have the expertise --

5      which I haven't heard -- to even opine on what makes

6      something safe as opposed to what the railroad regulations

7      require?  It sounds like he's an expert on railroad

8      regulations, not safety.

9              MR. MINO:  I would say he's a expert on railroad

10     safety.  He knows what the regulations require.

11             THE COURT:  Railroad safety regulations, then, not

12     railroad safety.  There's nothing in this report that

13     suggests he's an expert in safety at all.  He doesn't do any

14     safety stuff with railroads.  He knows the safety

15     regulations.  That's it.  There's a difference between

16     saying, I know what safety regulations are, I know what they

17     have to do to comply with regulations, as opposed to, I can

18     look at how they operate independent of the regulations and

19     opine on what's reasonably safe.  And I don't think he can

20     express an opinion on the latter.

21             Unless you want to establish that he has an

22     independent basis in safety.  It doesn't sound like he has

23     any background in safety at all.  That's why I said, what

24     are you qualifying him for?

25             I mean, this is what he talks about.

CHARLES P. McGUIRE, C.C.R.

1        Do you have his CV?

2        MR. ROSENTHAL:  I don't have it here.

3        Do you have his CV?

4        MR. MINO:  I have it somewhere.

5        THE COURT:  Yes, here, he says, about the grip

6    tape, it's on page six.  He says:  "When Foder stated 'there

7    was nothing technically wrong with the train, per se,' he

8    added that 'grip tape should have been on the train.'"

9        I mean, it's not Foder's opinion that's actually

10   an expert opinion.  What he thinks is not particularly

11   compelling.

12       "No evidence has been presented of any

13   governmental or other 'safety regulation and/or guidance

14   concerning the maintenance'" and repair of the...

15       So that's all he's going to talk about is,

16   whatever -- no matter what they say, the regulations

17   didn't --

18       MR. ROSENTHAL:  Require it.

19       THE COURT:  -- didn't require it.

20       MR. ROSENTHAL:  And that's not disputed.

21       THE COURT:  And he talks about his -- he

22   challenges why this is analysis of friction.

23       MR. MINO:  He also talks about the claim that they

24   failed to maintain the car properly, failed to inspect it

25   properly.

1              THE COURT:  That's fine.

2              MR. ROSENTHAL:  But he doesn't have any expertise

3       in inspection or maintenance of rail cars.  He just said

4       that.

5              THE COURT:  He did.  He says, I'm not an expert.

6              You may want to examine him a little more.  That's

7       why I asked did you have a deposition taken.  You're right,

8       he just said, I know about railroad regulations, I'm not an

9       expert in safety or maintenance of cars.

10             And I guess he can talk about the fact that he

11      didn't actually run friction analysis with a deficit, but he

12      doesn't conclude --

13             MR. MINO:  And then he also talks about how he

14      climbed up and down the car and his --

15             THE COURT:  So?  I could climb up and down the

16      car.  That doesn't make me an expert.

17             MR. MINO:  But he can testify that he's done it

18      for years and what the normal working conditions are.

19             THE COURT:  You know what?  And see, Foder's done

20      it for years.  I wouldn't qualify him as an expert.  So did

21      Ms. Bou.  She's been climbing for years.  I wouldn't qualify

22      her as an expert in safety.  She's a worker.  That's the

23      difference.

24             So I'm saying you haven't established with this

25      witness any expertise beyond he knows the safety regulations

1      about railroads.

2             What would make him helpful to the jury about

3      climbing; the fact that he climbs up and down trains?  I

4      climb up stairs every day; I've been doing it for 52 years.

5      It doesn't make me an expert in stairs.  What do I tell the

6      jury about stairs?  Nothing.

7             So he has to say something more than, I climb on

8      trains because I'm a volunteer conductor for some railroad.

9      He has to say, I have expertise, I know about safety on --

10     establish, if you can, that he's an expert in safety

11     features on cars.

12            The fact that you climb up a car doesn't make you

13     an expert in how to make the cars reasonably safe.  That's

14     what the whole case is about.

15            So that's where I'm missing.  I mean, where is his

16     expertise to say he inspected -- maybe he can inspect the

17     car to say it's compliant with the guidelines, the FRA

18     guidelines.  That's probably within his expertise, because

19     he knows the guidelines and he can inspect them.  But I

20     don't know if he can testify beyond that because I don't see

21     it.  You haven't established it yet.

22            What can he say beyond, I inspected the car, it

23     complies with guidelines; these are the guidelines, I know

24     them well; I worked as an engineer and a conductor.

25            I mean, I don't even know how his civil

CHARLES P. McGUIRE, C.C.R.

1      engineering background makes him an expert on FRA

2      Guidelines.  It sounds like he just knows it because he's a

3      conductor, or a brakeman.

4              He's a brakeman, right?  He's not a conductor.

5              MR. ROSENTHAL:  He testified that he's just a

6      brakeman.

7              THE COURT:  In other words, if I'm a civil

8      engineer -- he can talk about friction, I get that, and

9      somehow the friction analysis made Widas's testimony

10     incompetent.  You could tie that up, about the friction.

11             But civil engineers don't learn about Federal

12     railroad regulations.  He learned about that in I guess his

13     job.

14             But what makes him an expert in safety?

15             MR. MINO:  Because I think the distinction between

16     safety and FRA regulations is much less -- it's not clearly

17     as defined as everyone is trying to make it out to be.  If

18     you comply with -- the argument is, the compliance with the

19     FRA is the safety.

20             THE COURT:  Well, but see, there's two different

21     ways of looking at it.  This is critical.  You can say, I

22     look at this train and I know the regulations, and I can say

23     that this car complies with all the regulations.

24             And by the way, that's not in dispute in the case.

25     Widas never said it wasn't in compliance.  If it was not in

CHARLES P. McGUIRE, C.C.R.

1  compliance, it would be negligence per se.  He can say that.

2  That's helpful to say it's FRA-compliant.  But then he has

3  to take it to the next step to say, independent of the

4  regulation, I don't -- just because they comply, I am of the

5  opinion that it was not safe, or it is safe, --

6              MR. ROSENTHAL:  And he never says that --

7              THE COURT:  -- because I'm an expert in safety.  I

8  know all -- I've done safety analysis, I know about human

9  error analysis, all those areas of study in my practice, and

10 I can tell you, arguably, that you don't need the grip tape,

11 because as long as you put your foot on, it's safe enough.

12              I don't think he can say that because he has no

13 expertise in that area to offer an opinion independent of

14 the regulation.

15              MR. ROSENTHAL:  And never does.  He doesn't offer

16 that.

17              THE COURT:  And even in his report, he doesn't say

18 anything that gives him the right to say that.  He might

19 want to say it.  I'm not going to let him unless you

20 establish he has an independent basis to opine on safety.

21              His only basis that you qualified him for under is

22 with regard to the regulation.  Well, you know what?  So

23 were all the PATH people that he brought out.  They were all

24 experts in regulation.  They're trained in it.  Avril did

25 it, and the other two guys said, we complied with FRA

CHARLES P. McGUIRE, C.C.R.

1      regulations.  What he's saying is duplicative of that.

2            But I want you to know that unless you show me,

3      I'm not allowing you to go beyond that to say, my safety

4      experience says this train didn't need the grip tape, the

5      bar was fine.  I don't think it's in the report anyway.

6            I just want to make sure we're all on line.  I'm

7      going to qualify him as an expert in railroad safety

8      regulations and in civil engineering.  But I'm not going to

9      qualify him for safety.

10            MR. ROSENTHAL:  And there's one other issue, Your

11      Honor, that I want to bring to your attention now.  I was

12      going to bring it out later, when I started cross.

13            One of his opinions is, This train is safe because

14      I was able to climb it.  He climbed this train, and he's

15      also criticizing Widas for not doing certain --

16            THE COURT:  Velocity testing.

17            MR. ROSENTHAL:  -- testing on --

18            THE COURT:  The numbers.

19            MR. ROSENTHAL:  -- on that area.  The area is

20      covered with grip tape.  If he makes those -- those

21      opinions, I can -- that opens the door, and I can ask him

22      about, well, wasn't the area covered by grip tape, and

23      therefore, he was unable to --

24            THE COURT:  Well, let's see if he opens it.

25            MR. MINO:  Also, the way he climbed up --

1           MR. ROSENTHAL:  But he's making criticisms of

2     Widas not doing experimentation.

3           THE COURT:  But if he says, I climbed up, and I'm

4     confident that this train complied with the FRA, that's

5     fine.

6           MR. MINO:  Right, and also, when he climbed up,

7     and it's in his report, he put his foot on the diamond

8     plate.

9           You can't say, you climbed up and you put your

10    foot on the grip tape.

11          MR. ROSENTHAL:  I can't tell that by the report.

12          THE COURT:  So he climbed up.  What is he going to

13    say; it complied with the FRA?

14          MR. MINO:  It complied with the FRA, and it was no

15    different than any other train I climbed up.

16          THE COURT:  That's fine, he can say that; but he's

17    not going to go to the next level and say this is reasonably

18    safe.

19          MR. MINO:  No.

20          MR. ROSENTHAL:  But if it's no different from any

21    other train --

22          THE COURT:  No, that doesn't open the door.  It

23    doesn't.  If he says -- because the jury doesn't know about

24    subsequent remedial measures.  They just don't know.

25          MR. ROSENTHAL:  I know, but it does impact --

1          THE COURT:  No, he has a point.  If he says, I

2     climbed up, it's no different than the other train and it's

3     safe, is it safe because that grip tape was on there?

4          MR. MINO:  I will lay the foundation that he

5     places his entire foot on the diamond plate.

6          THE COURT:  But did the train that he climbed up

7     have grip tape on it?

8          MR. MINO:  Yes, it didn't come into play at all --

9          THE COURT:  Oh, wait.  He climbed up on a train

10    with grip tape?

11         MR. ROSENTHAL:  Yes.

12         THE COURT:  Then if you're going to say he climbed

13    up on that train and it's safe as is, and then he says,

14    well, let me ask you something, the train you climbed up has

15    grip tape, then he's opining on the very design that they're

16    expressing --

17         MR. MINO:  But he will be saying that it's safe

18    because you put your entire foot on the diamond plate.

19         MR. ROSENTHAL:  Based solely on his -- here, based

20    solely on his ability to climb up on that train.  That

21    train.

22         THE COURT:  He's right.  He said, I was able to

23    climb it safely.  He should be allowed to cross-examine him

24    on:  What did you climb on?

25              Well, there was grip tape on it.

1          Because the jury could easily say, well, he was on

2     the diamond, but you know, there was grip tape.  Why is

3     there grip tape?

4          In other words, you can't have it both ways.  If

5     you're going to open that door and -- if the train that he

6     climbed on had the safety feature that they say was lacking

7     for Mr. Foder, he can't climb up there and say this train

8     was safe and it would have been safer than a different train

9     without grip tape.  The train he climbed on had grip tape.

10    That's maybe the reason why he didn't fall.  They have the

11    right to cross-examine him on it.

12          MR. MINO:  Not if he says, I put my foot entirely

13    on the diamond plate and -- it doesn't come into play at

14    all.

15          THE COURT:  It does come into play, because --

16          MR. MINO:  Not if you don't use it.

17          THE COURT:  This is -- I'm telling you, you're

18    opening the door.  I'm giving you full and fair warning:  If

19    he talks about climbing onto a train with grip tape, you can

20    say, well, I put it on the diamond, and it's fair

21    cross-examination for them to say, yes, but didn't you have

22    the security knowing there was grip tape on the end, and

23    this is different than the car that Mr. Foder went on.

24    That's fair cross-examination.  It would be reversible error

25    not to allow them to test that.  He didn't test, and he

1        climbed on a car that has the very same safety feature that

2        the whole case is about.  Doesn't matter if you --

3                    MR. MINO:  Can I put it on the record?

4                    THE COURT:  Sure you can.

5                    MR. MINO:  So the Petrie case, which I believe

6        Your Honor said is guiding this, talks about coming in for

7        impeachment when it claims it was the best or safest, or

8        words to that effect.

9                    That is not what he is going to testify to.

10                   THE COURT:  There is a difference.  This is not

11       impeachment.  He is going to testify that, I was able -- I'm

12       a 70-year-old guy, I'm an engineer, I climbed trains my

13       whole life, I was safely able to climb this train.

14                   And how were you able to climb the train?

15                   I put my foot on the diamond plate.

16                   It is fair game for them to say, wasn't there grip

17       tape on the smooth surface, unlike Mr. Foder, right?

18                   So, yes, there was.

19                   And why was that?

20                   Well, the train I climbed had it on.

21                   Now, if that's all he says, they haven't opened

22       the door to the subsequent remedial measures.  It doesn't

23       mean -- he doesn't get to say, wasn't there a change in all

24       the cars.  I won't allow that.  But the jury's going to know

25       the train -- for whatever reason, the train he climbed up

1    had grip tape.  I'm not going to let them open it to --

2              MR. ROSENTHAL:  The whole thing.

3              THE COURT:  -- the renovation, but the jury is

4    entitled to know, if he's going to say on this witness

5    stand, I climbed safely on that train, and I inspected it

6    and all was fine, and I put my foot on the diamond plate,

7    for them to say that, Didn't the train you climbed, didn't

8    that particular train that you climbed that was different

9    than Mr. Foder's have grip tape?  That's what I'm going to

10   allow.

11             MR. MINO:  I guess -- you just said, though,

12   that's not impeachment.  The only way a subsequent remedial

13   repair comes in for is impeachment.

14             MR. ROSENTHAL:  No, that's not true.

15             MR. DiGIULIO:  No, no, no.

16             THE COURT:  Here's why.  It's not being offered to

17   show a subsequent remedial repair.  It's being offered to

18   show the status of the train when he climbed on it.

19             MR. MINO:  It's being offered to show --

20             THE COURT:  Don't argue with me.  This is not even

21   close.  You cannot have an expert who's going to say, I

22   climbed on a train and it was perfectly fine and it's safe,

23   when the train that he climbed had the same exact safety

24   feature that this case is all about, and for me to deny them

25   the opportunity to at least ask the expert, isn't it true

1      that when you climbed up, there was safety tape on the end,

2      and that was different than the car than Mr. Foder, and ask

3      him about safety tape.

4              Now, I'm not going to let them open the door about

5      the whole remediation, but he's allowed to say that the

6      experiment you did was on a different train than Foder was

7      on.

8              It's not even close.

9              So you can choose how you want to do the direct.

10     Maybe you don't want to go there, because the report doesn't

11     go into evidence, his testimony goes into evidence.  But

12     just be forewarned:  If you ask him about that, and you open

13     the door about him climbing on the train, I'm going to give

14     them some room to talk about what he climbed on.

15             MR. MINO:  Okay.  Then I just want to understand

16     what I can or can't ask in order not to open the door,

17     because his entire inspection was on a train that had the

18     grip tape on it.  Does that mean I can't ask about any of

19     the inspection?

20             THE COURT:  If you're going to ask him -- if

21     you're going to talk about his climbing on the train or his

22     inspection of the train, he's going to be, you know -- if

23     he's going to talk about the climbing on the train, you're

24     absolutely going to open the door to, wasn't there grip

25     tape.  If he's just going to say, I observed that -- you

CHARLES P. McGUIRE, C.C.R.

1    give me an example.  I don't know what you want to ask him

2    or how you're going to ask it, so it's hard for me to give

3    you --

4              MR. MINO:  The ultimate question is something

5    along the lines, when you looked at the train, was there

6    anything about the train that didn't comply with

7    regulations?  No.

8              THE COURT:  Well, that's fine.  That doesn't open

9    the door.  Your inspection, did it comply with all the

10   regulations?  Yes, it did.  That doesn't open the door.

11             MR. MINO:  Because I just want to be --

12             MR. ROSENTHAL:  No, that doesn't open the door.

13   There's no -- there's no objection --

14             THE COURT:  Value to it.

15             MR. ROSENTHAL:  There's no value to it.

16             THE COURT:  It's cumulative.  I'll allow it

17   anyway, but it's cumulative.

18             Okay?  Let's go back.

19          (The following takes place in open court)

20             THE COURT:  Okay.  I know there's an application

21   to qualify Mr. Ubaldi as an expert, and we're going to limit

22   that to expertise in railroad safety regulations.  Okay?

23             Anything further you want him qualified as?

24             MR. MINO:  Not at this time.

25             THE COURT:  Okay.

1                    DIRECT EXAMINATION (CONTINUED)

2       BY MR. MINO:

3       Q.    Okay.  Mr. Ubaldi, did there come a time when you did

4       a site inspection of a PATH car?

5       A.    Yes, I did.

6       Q.    Okay.  Where did that site inspection take place?

7       A.    At -- I think it was the Newark shop.

8       Q.    Okay.  So was it in a building, outside?

9       A.    It was in a building.

10      Q.    Now, when you look at the PATH train car, did you look

11      at the available grab bars?

12      A.    Yes, I did.

13      Q.    And are you familiar with any regulations within the

14      FRA that speak to placement of grab bars?

15      A.    Yes.  Again, going back to the Code of Federal

16      Regulations, Title 49 has to do with transportation, and

17      Part 231 has to do with railroad safety appliances.

18      Q.    Okay.  Are you specifically familiar with Part 231.14?

19      A.    Yes, I am.

20      Q.    Okay.  And explain to the jury what that regulation

21      discusses.

22      A.    That particular regulation talks about the safety

23      appliances, the handholds, the steps for passenger cars with

24      I believe it's no end vestibule.

25      Q.    Okay.  And does that include a requirement that the

CHARLES P. McGUIRE, C.C.R.

1     handholds be above the step?

2     A.    That is correct.

3     Q.    Now, when the requirement says it has to be above the

4     step, explain what that means.

5     A.    Well, it simply means it has to be higher than.

6     There's no other specificity given in the regulation as to

7     where above the step it has to be.

8     Q.    So on the PATH car that you looked at, was the

9     handhold above the step?

10    A.    Yes, it was.

11    Q.    Was it directly above the step?

12    A.    No, it was not.

13    Q.    So it not being directly above the step, does that

14    violate that particular section of the FRA?

15    A.    No, it would not.

16    Q.    Now, did you look at the end step or loop step on the

17    train?

18    A.    Yes, I did.

19    Q.    Do you recall about how high above the ground it was?

20    A.    I may actually have that here.

21         I thought I had it in here.

22         I can't find it right now, but I believe it's

23    about -- maybe here, I might have it.

24         I'm quoting from Mr. Widas's report, and it says

25    the rung was 21 and one quarter inches above top of rail.

1    Q.    Okay.

2    A.    I knew I had it somewhere.

3    Q.    Now, I'm going to show you what's been marked as

4    Plaintiff's Exhibit 23A.

5          Can you see that?

6    A.    Yes.

7    Q.    Based on this photo, can you tell where the grab bar

8    is?

9    A.    Yes.

10   Q.    Okay.  Can you tell where the end step is?

11   A.    Yes.

12   Q.    Okay.  Would it be possible to move the end step in

13   underneath the grab bar?

14   A.    From my inspection, it would be difficult.  There's a

15   -- if you've ever actually operated a model railroad and you

16   go around a real sharp curve, there's the -- the two cars

17   will bend like this, and the coupler that holds the two

18   together will have to swing from one side to the other.

19          Because of the nature of the PATH system, there

20   are some sharp curves, and so that coupler will swing fairly

21   wide, and if you move that step any further in, it would be

22   in the way of the coupler.

23          MR. ROSENTHAL:  Objection, Your Honor, to the

24   scope of his expertise.  He's into design issues now.

25          THE COURT:  I'll allow it.  I don't think we're

1   going much further with that.  I'll allow it.  He does have

2   an expertise in railroads as a brakeman.

3         Go ahead.

4         MR. MINO:  Okay.

5   Q.   Now, in addition to -- when you looked at the PATH

6   train car that day, was there diamond plate on the PATH

7   train car?

8   A.   Yes, there was, on the anti-climber.

9   Q.   Okay.  And you testified before that you're familiar

10  with OSHA.

11  A.   Yes.

12  Q.   Would you just explain to the jury what OSHA is?

13  A.   OSHA is the Occupational Safety and Health

14  Administration, another Federal agency, and it usually deals

15  with safety in industrial settings.  In most settings on the

16  railroad, the FRA regulations will govern.

17  Q.   Okay.  Did OSHA mention anything about diamond plate?

18  A.   Yes.  In some sections of OSHA, it talks about use of

19  a non-slip surface, and one of the recommendations it has as

20  a non-slip surface is diamond plate.

21  Q.   So based on your inspection of the PATH train car that

22  day, is it your opinion -- did you come to an opinion as to

23  whether or not anything with respect to what you looked at

24  on that PATH train car violated the applicable safety

25  regulations?

CHARLES P. McGUIRE, C.C.R.

654

1    A.    I saw no violations.

2    Q.    And did you come to this opinion with a reasonable

3    degree of certainty?

4    A.    Yes, I did.

5    Q.    And that is, a reasonable degree of certainty as a

6    railroad safety regulation --

7    A.    Yes.

8    Q.    -- expert?

9          MR. MINO:  I have nothing else.

10         MR. ROSENTHAL:  This should hopefully be very

11   short.  Famous last words, right?

12                    CROSS-EXAMINATION

13   BY MR. ROSENTHAL:

14   Q.    You testified about C.F.R. -- 49 C.F.R. 231.14?

15   A.    Yes.

16   Q.    Okay, and is it your testimony that this car is in

17   compliance with that regulation?

18   A.    Actually, that car, from documents I've seen from

19   PATH, there really is no C.F.R. reference that covers an end

20   step, but if you were to apply -- if you were to use the

21   guidelines or the information in 231.14, there is nothing in

22   that arrangement that would violate that section.

23   Q.    Okay.  So the 231.14 says nothing about the end step.

24   A.    Correct.

25   Q.    And it says something about handholds; right?

CHARLES P. McGUIRE, C.C.R.

1    A.    It says handholds in terms of sill steps, which are on

2    the side.  There is nothing that talks about end steps in

3    231.

4    Q.    Right.  But it also talks about -- isn't there some

5    talk in 231 about handholds for coupling?

6    A.    I don't believe so.

7    Q.    231.14(d).  Are you familiar with 231.14(d), "End

8    Handholds"?

9    A.    I'd have to see it.

10   Q.    Okay.  But as we sit here now, you're not familiar

11   with it?

12   A.    I can't recall it offhand.

13   Q.    Well, let me ask you this before we go into a whole

14   thing.  Are you here in any way to give an opinion as to

15   whether or not PATH is in compliance with 231.14(d)

16   regarding end handholds?

17   A.    That was not really brought up.

18   Q.    Okay.  Then I don't need to go any further into it.

19             MR. ROSENTHAL:  Thank you.

20             THE COURT:  You're welcome.

21                       REDIRECT EXAMINATION

22   BY MR. MINO:

23   Q.    Are you familiar with what manual coupling is?

24   A.    Yes.

25   Q.    Okay.  What is that?

1    A.    Manual coupling is when the two couplers -- they're

2    called knuckle couplers because they look like a knuckle,

3    and they come together and form a bond this way.  They are

4    simply mechanical.  There is no electronics.  It is just

5    bare metal.  And that's what manual coupling is.

6    Q.    Okay.  Are you aware of whether or not PATH does

7    manual coupling or if it has automatic coupling?

8    A.    I believe they have automatic coupling because their

9    couplers have all the signal lines, the air hose lines, the

10   train lines that help operate it, and it's all one automatic

11   thing.

12              MR. MINO:  I have nothing else.

13              THE COURT:  Okay.  You're excused.

14              Thank you.

15              THE WITNESS:  Thank you.

16         (Witness excused)

17              THE COURT:  All right.  So, ladies and gentlemen,

18   it's 10:25.  We're on a good schedule.  We have to set up

19   the video, so I think this is a good time to take a morning

20   break and go to the bathroom and get something to drink, and

21   then --

22              How long; maybe 15 minutes, 10, 15 minutes?

23              MR. MINO:  Yes.

24              THE COURT:  Okay, to set up the video, and then

25   we'll take our lunch break.

1          Okay.  Thank you.

2          THE COURT CLERK:  All rise.

3      (The jury exits)

4          THE COURT:  Okay.  See you in 15 minutes.

5          MR. ROSENTHAL:  Thank you, Your Honor.

6      (Recess taken)

7      (Jury out)

8          THE COURT CLERK:  All rise.

9          THE COURT:  Okay.  Are we good?

10         MR. MINO:  Yes.

11         MR. ROSENTHAL:  Yes, Your Honor.

12         THE COURT:  All right.  Bring in the jury.

13         THE COURT CLERK:  All rise.

14     (The jury enters)

15         THE COURT:  Okay.  Welcome back, everyone.

16         We have another movie.  It's not "Modern Family,"

17     but it's just as interesting, and we're going to play it

18     now.

19         It's the testimony of Dr. --

20         MR. MINO:  Dr. Robert Dennis.

21         THE COURT:  -- Dr. Robert Dennis, who will offer

22     testimony regarding medical issues in this case.  Okay?

23         And how long is the movie, just so we know?

24         MR. MINO:  It is about an hour and a half.

25         THE COURT:  Okay.  An hour and a half.  And then

1    after the movie, we'll take a longer lunch break today,

2    maybe an hour, a little bit longer, and we'll come back, if

3    we can, give you a jury charge, and then dismiss you for the

4    day, if we can get the charge worked out.

5            Tomorrow, we just have closing statements and

6    deliberations.  Okay?

7            So it's almost 11, so this is perfect.  We'll

8    probably break around 12:30, we'll probably come back at

9    two, and -- does that make sense?

10           MR. ROSENTHAL:  Your Honor, can we be seen at

11   sidebar for a moment?

12           THE COURT:  Sure.  Sure.  Of course.

13        (The following takes place at sidebar)

14           MR. ROSENTHAL:  I don't want to be --

15           THE COURT:  Tell me.

16           MR. ROSENTHAL:  -- nitpicky, but I think it might

17   be better if we have the charge and then the closings

18   together.

19           MR. MINO:  Well, in that case, I'm not ready to

20   close today.

21           MR. ROSENTHAL:  No, no, tomorrow.  Tomorrow.  I'm

22   not saying do it now.

23           MR. MINO:  Okay.

24           THE COURT:  It's fine.  You're right.  It's fair.

25   I was trying to make tomorrow easier.  It's fair.  I think

1        you're right.

2                But let's get it done totally for the reason that

3        Alex is going to Scotland tonight.

4            (Laughter)

5                MR. ROSENTHAL:  We're going to get the charge

6        done.

7                THE COURT:  Totally done.

8                So we'll dismiss them.  I'll tell them after the

9        movie's over that they are free to go for the day, and we'll

10       come back tomorrow at 10.

11               MR. ROSENTHAL:  All right.  Thanks.

12           (The following takes place in open court)

13               THE COURT:  Okay.

14           (The videotaped deposition of Dr. Robert Dennis was

15       played.)

16           (Playback ends)

17               THE COURT:  Are we done?

18               MR. MINO:  Yes.

19               THE COURT:  Okay.

20               So, ladies and gentlemen of the jury, it is now

21       12:20.  I spoke with the lawyers, and I think it makes more

22       sense to release you for the day and come back tomorrow, and

23       we'll have the charge and we'll have the closing statements,

24       and then you will be given the opportunity to deliberate.

25               I originally thought I would hold you, but in case

1    there's a delay and it takes longer to finalize the charge,

2    I don't want you guys sitting around this afternoon waiting

3    when I could just have it go more smoothly tomorrow.

4           The charge usually takes about an hour, maybe a

5    little less in this case, and then we'll have closing

6    statements.  We'll order lunch for you, compliments of the

7    Federal Courts, and then we'll give you the case to

8    deliberate.

9           I'm very aware of the value of your time.  I don't

10   want to hold you here for an hour and a half, two hours if

11   it takes longer.  You have to come back anyway tomorrow.  We

12   might as well do the whole thing in the morning.  So that's

13   what we're going to do.

14          So I'm going to discharge you for the day.

15          I will remind you of your responsibility to not

16   talk about the case, you'll have that opportunity tomorrow

17   when you deliberate, and not to do any independent research,

18   and to enjoy the rest of the day, and we will resume

19   tomorrow at 10 a.m.  I know it's a little hard in the

20   morning with traffic; it gives you a little bit of wiggle

21   room, so to speak.  And my hope and expectation is that

22   we'll be able to conclude everything tomorrow.

23          Okay?  So with my gratitude, and the gratitude of

24   the lawyers, you are discharged for the day.  We'll see you

25   tomorrow at 10 a.m.

CHARLES P. McGUIRE, C.C.R.

1            Thank you.

2            THE COURT CLERK:  All rise.

3        (The jury exits)

4            THE COURT:  Okay, guys.  We can take a break and

5    come back.  It's 12:30.

6            Does it make any sense at all to meet with

7    Judge Wettre, since we have time this afternoon, about

8    settlement?  Is that something that's on the table?  We

9    never talked about it, for obvious reasons, I'm the trial

10   judge.  She popped in the other day and said if they wanted

11   to see me again, I'm here.

12           So it's up to you.

13           MR. ROSENTHAL:  I don't think that --

14           THE COURT:  Let me ask PATH.

15           We're off the record, of course.  Let's go off the

16   record.

17       (Off the record discussion)

18           THE COURT:  Okay.  Thank you.

19           THE COURT CLERK:  All rise.

20       (Luncheon recess taken)

21

22

23

24

25

1              A F T E R N O O N    S E S S I O N

2         (Jury out)

3              THE COURT CLERK:  All rise.

4              THE COURT:  Back on the record.

5              Charge conference.

6              I'm going to mark, or Amy is going to mark,

7    rather, I think this will be Court Exhibit 7.  Okay?  And I

8    marked it 7 because, what I did was, I marked yesterday the

9    first draft I gave you, and then marked the draft I gave you

10   of instructions, the draft verdict sheet, and I marked your

11   proposal.

12             And I took into consideration some of those

13   arguments, recognizing that everything you objected to is

14   preserved and we have the record now with the Court

15   Exhibits, and I incorporated some of the changes that you've

16   asked for, but we can go through them, and I even made

17   further modifications to the earlier ones this morning that

18   I didn't mark as a Court Exhibit because we didn't discuss

19   it.

20             So this is what I think is close to the final, but

21   I'll hear everyone.  There's really only a very small amount

22   of -- these are probably the narrowest instructions I've

23   ever worked with.  It's really one count, which makes it

24   easier for everybody.

25             So why don't we begin with Plaintiff's counsel?

1          MR. ROSENTHAL:  Reading through -- first of all,

2     Your Honor said that all of our prior objections are

3     preserved, so I don't need to go back over them now?

4          THE COURT:  Well, let's see.  The ones that you

5     made on the record yesterday are all preserved.

6          MR. ROSENTHAL:  Okay.  So if one wasn't put, I

7     don't need to --

8          THE COURT:  No.  That's why I did it this way.

9          MR. ROSENTHAL:  Okay.

10         THE COURT:  You made your objections on the record

11    yesterday and marked them, they're preserved as part of the

12    record, nothing's waived, but if there's a new objection,

13    you need to let me know.

14         MR. ROSENTHAL:  I don't have an objection to

15    anything that's in here.  I do -- actually, I don't have any

16    objection, really, at this point to anything that is in the

17    jury instructions other than what I voiced yesterday.

18         I still have an objection to putting his --

19    whatever it is in there --

20         THE COURT:  The basis for his claims?

21         MR. ROSENTHAL:  No, no.

22         THE COURT:  Where is that?  What page is that on?

23         MR. ROSENTHAL:  You know what?

24         THE COURT:  What page is that on, Alex?

25         LAW CLERK SILAGI:  It should be on page -- page

1    10.

2             THE COURT:  Page 10, "The Parties' Claims."

3             MR. ROSENTHAL:  Yes, "The Parties' Claims."  The

4    only suggestion that I would have is, after -- on page 11,

5    you say, "PATH denies Mr. Foder's claim."  I think that you

6    should say Plaintiff denies PATH claim after you set forth

7    their contributory negligence claim, their claim of

8    negligence for the Plaintiff.

9             THE COURT:  All right.  So PATH denies Mr. Foder's

10   claim and Mr. Foder denies PATH's claim?

11            MR. ROSENTHAL:  Right.

12            THE COURT:  That's fine.  That makes sense.  I'll

13   add that:  "Mr. Foder denies PATH's claim."  That will be on

14   line six.

15            MR. ROSENTHAL:  Right.

16            THE COURT:  It's in.

17            MR. ROSENTHAL:  Other than that, I think I'm fine.

18            The issue of -- you have in there Plaintiff's

19   instruction 76.  I'm not sure -- and you probably have

20   struggled over this as well, because it's the last charge in

21   the negligence area.  I'm not sure whether it should go in

22   damages or not.  But other than that --

23            THE COURT:  I think it makes sense to put it

24   there.

25            MR. ROSENTHAL:  Then I have no objection.

1          THE COURT:  I just want you to know, I just give

2     an explanation on paragraph 49 and 51, and that is about

3     assumption of the risk.  The case that I used was your case,

4     the Fashauer case.  The Court has expressly said use that

5     language, so I used it.

6          MR. ROSENTHAL:  Yes.

7          THE COURT:  But I think it adds some ambiguity, so

8     I added -- the "in other words" was me.

9          MR. ROSENTHAL:  I have no objection to the charge.

10          THE COURT:  Okay.

11          Okay.

12          MR. MINO:  So as far as what is in here and

13     written on the page, PATH has no objection.

14          However, PATH -- and I guess it was my fault

15     because I thought I raised it yesterday, but I did not.

16          PATH would ask that a mitigation of damages charge

17     be put in.

18          There was testimony from Dr. Greisberg that not

19     wearing the floor orthotic would aggravate the tibial

20     tendinitis.  He said not the osteochondral lesion, but the

21     tibial tendinitis.

22          Plaintiff testified that he does not always wear

23     the floor orthotic.  Dr. Dennis testified that when he came

24     to see him, he was not wearing it.

25          So Plaintiff is going to add that -- claim that as

1       part of his damages.

2                   THE COURT:  Was there testimony that he was told

3       to wear it?

4                   MR. MINO:  Yes.  He testified himself, yes, I wear

5       it, I just don't wear it all the time.

6                   THE COURT:  Was there testimony that he was told

7       to wear it all the time?

8                   MR. MINO:  There was testimony that he was told to

9       wear it.  It's also in Dr. Greisberg's records to wear the

10      floor orthotic.

11                  THE COURT:  All the time.  In other words, I

12      thought the testimony was he wore it some of the time.

13                  MR. MINO:  Yes.

14                  THE COURT:  But was there any express instruction

15      he should wear this all the time?  Like a retainer:  Do you

16      have to wear it all the time?

17                  MR. MINO:  The testimony from Dr. Greisberg is

18      that if he doesn't wear it, he would aggravate the tibial

19      tendinitis.  That was the question posed to him, and he said

20      yes.

21                  THE COURT:  Okay.

22                  MR. ROSENTHAL:  But if he doesn't wear it -- I

23      mean, I think what Your Honor was asking was, if he doesn't

24      wear it at all, that's one thing, but if he wears it and

25      doesn't wear it all the time, that's something else.  And

1    I'm not sure that --

2                THE COURT:  No, I mean, I wasn't aware that --

3    given that proffer, I'll add that mitigation in.  I mean, I

4    think it's very slight.

5                This is not a case like, don't run, and don't

6    swim, or don't run, and the guy is out doing marathons.

7    This is not the case.  In fact, this is the case where the

8    Plaintiff went to the PATH doctors and followed instructions

9    and went back to work.  So this is really not that case.

10               But if there is any evidence that he didn't

11   completely follow to the T the doctor's instructions, I

12   think it would be appropriate to put in the mitigation.

13               So I'll put that language in, the one paragraph.

14   Okay?

15               MR. ROSENTHAL:  And Plaintiff objects but

16   understands the Court's ruling.

17               THE COURT:  Okay.  So noted.  I note your

18   objection.  I'll put it back in.

19               So we're going to put that in, and the other

20   change, the line that we added, and then we're going to take

21   out all the Plaintiff's instructions, all the little heads

22   and the case cites and the quotes --

23               MR. ROSENTHAL:  Oh, the --

24               THE COURT:  -- because the jury -- I'm going to

25   give them copies of this to take into the jury room with

1    them, so I don't want them to see anything other than

2    Plaintiff's instructions, Defendant's instructions.

3                    MR. ROSENTHAL:  I understand.

4                    MR. MINO:  That was actually going to be a

5    question I have.  Are we going to give -- will they have the

6    instructions physically --

7                    THE COURT:  Yes.

8                    MR. MINO:  -- when we're doing our closing, or not

9    until they go back?

10                   THE COURT:  They will not have them.  I'll make

11   sure they listen --

12        (Laughter)

13                   MR. MINO:  Okay.

14                   THE COURT:  I'll give them all their cell phones

15   -- I'll give them wifi during your closings.  How's that?

16        (Laughter)

17                   MR. ROSENTHAL:  Netflix.

18                   THE COURT:  I'll give them Netflix.

19        (Laughter)

20                   THE COURT:  I'll send one copy into the jury room.

21                   MR. MINO:  Okay.

22                   THE COURT:  And that's it.  Okay?

23                   And make sure today before you leave that you go

24   over with Amy all the exhibits so we can put them in.

25                   MR. MINO:  I was actually just going to mention,

1      counsel and I have, with the Defendant's Exhibit I, the PATH

2      medical records, counsel and I went over --

3                    THE COURT:  Perfect.

4                    MR. MINO:  I pulled everything out we discussed

5      it, so --

6                    THE COURT:  All right.  So give that to Amy.

7      She's in charge of all the evidence.

8                    So let me make this one change.  We'll come back

9      out, give a quick look.

10                   The verdict sheet I changed to incorporate your

11     changes.  I thought they were very good changes, actually.

12                   Amy has marked this as 7, the final will be Court

13     Exhibit 8, and you'll get copies, and you can go home and

14     get ready for your big day tomorrow.  Okay?

15                   So give me a couple of minutes.

16                   THE COURT CLERK:  All rise.

17             (Defendant's Exhibit I marked in evidence)

18             (Recess taken)

19             (Jury out)

20                   THE COURT CLERK:  All rise.

21                   THE COURT:  Everyone, you got the final version

22     that Alex brought out to you a minute ago?

23                   MR. ROSENTHAL:  Yes.

24                   MR. MINO:  Yes.

25                   MR. DiGIULIO:  Yes.

CHARLES P. McGUIRE, C.C.R.

1                    THE COURT:  Any comments, questions,

2        modifications?

3                    MR. ROSENTHAL:  We're all --

4                    THE COURT:  We're all good?  Okay.  So we'll mark

5        this --

6                    Amy, what is this marked as?  Court Exhibit 8?

7                    THE COURT CLERK:  Yes.

8                    THE COURT:  This is the final.

9                    This is Court Exhibit 8, the final.  You guys have

10       the final.

11                   We'll come in tomorrow, call the jury in around

12       10.  You don't have to get here before 10.  Ten is fine.

13       And this should take me 45 minutes to read, and then do your

14       closings, I'm sure they'll be no more than a half hour, 45

15       minutes each, they'll get their lunch, and hopefully we'll

16       get a verdict; if not, we come back on Monday.  Okay?

17                   Have a good night's sleep.  Have a safe trip home.

18       We'll see you tomorrow at 10.

19                   THE COURT CLERK:  All rise.

20                   (Court Exhibits 7 and 8 marked for identification)

21                   (Matter adjourned until Friday, November 18, 2016,

22       commencing at 10 a.m.)

23

24

25


                        CHARLES P. McGUIRE, C.C.R.

1                            <u>INDEX</u>

2
                                  Voir
3                      <u>Direct</u>    <u>Dire</u>    <u>Cross</u>    <u>Redirect</u>    <u>Recross</u>

4       <u>WITNESSES FOR</u>
        <u>THE DEFENDANT</u>:
5
        AUGUSTINE F.    624,    628     654      655
6       UBALDI          650

7       ROBERT DENNIS   659
        (via videotaped
8       deposition)

9

10      <u>EXHIBITS</u>:                        <u>Marked</u>        <u>Received</u>:

11      D-I                                                     669

12      Court Exhibit 7                     671

13      Court Exhibit 8                     671

14

15

16

17

18

19

20

21

22

23

24

25


                    CHARLES P. McGUIRE, C.C.R.

**$**

**$400** [1] - 627:15

**'**

**'grip** [1] - 637:8
**'safety** [1] - 637:13
**'there** [1] - 637:6

**1**

**10** [10] - 656:22,
659:10, 660:19, 660:25,
664:1, 664:2, 670:12,
670:18, 670:22
**100-percent** [1] -
634:12
**10:25** [1] - 656:18
**11** [2] - 658:7, 664:4
**12:20** [1] - 659:21
**12:30** [2] - 658:8,
661:5
**15** [3] - 656:22, 657:4
**16th** [1] - 628:8
**18** [1] - 670:21

**2**

**2016** [1] - 670:21
**21** [1] - 651:25
**213** [2] - 627:6, 629:8
**214** [2] - 626:1,
629:14
**231** [3] - 650:17,
655:3, 655:5
**231.14** [4] - 650:18,
654:14, 654:21, 654:23
**231.14(d** [2] - 655:7,
655:15
**231.14(d)** [1] - 655:7
**23A** [1] - 652:4

**3**

**3** [1] - 623:2

**4**

**45** [2] - 670:13,
670:14
**46** [1] - 624:22
**49** [3] - 650:16,
654:14, 665:2

**5**

**51** [1] - 665:2
**52** [1] - 639:4

**6**

**60-40** [1] - 626:9

**7**

**7** [4] - 662:7, 662:8,
669:12, 670:20
**70-year-old** [1] -
646:12
**76** [1] - 664:19

**8**

**8** [4] - 669:13, 670:6,
670:9, 670:20

**A**

**a.m** [3] - 660:19,
660:25, 670:22
**ability** [1] - 644:20
**able** [6] - 642:14,
644:22, 646:11, 646:13,
646:14, 660:22
**absolutely** [3] -
634:19, 635:12, 648:24
**accident** [1] - 626:13
**accidents** [1] -
625:17
**actual** [1] - 627:14
**add** [3] - 664:13,
665:25, 667:3
**added** [3] - 637:8,
665:8, 667:20
**addition** [1] - 653:5
**adds** [1] - 665:7
**adjourned** [1] -
670:21
**adjunct** [1] - 625:20
**Administration** [3] -
626:24, 627:2, 653:14
**advise** [1] - 625:24
**afternoon** [2] - 660:2,
661:7
**agency** [1] - 627:3,
653:14
**aggravate** [2] -
665:19, 666:18
**ago** [2] - 624:22,
669:22

**ahead** [1] - 653:3
**air** [1] - 656:9
**airport** [3] - 626:18,
626:19, 630:7
**airports** [1] - 624:15
**ALD** [1] - 624:4
**Alex** [4] - 623:12,
659:3, 663:24, 669:22
**allow** [6] - 645:25,
646:24, 647:10, 649:16,
652:25, 653:1
**allowed** [2] - 644:23,
648:5
**allowing** [1] - 642:3
**almost** [2] - 633:16,
658:7
**amalgamation** [1] -
634:3
**ambiguity** [1] - 665:7
**American** [2] -
625:13, 625:14
**amount** [1] - 662:21
**Amy** [5] - 662:6,
668:24, 669:6, 669:12,
670:6
**analysis** [5] - 637:22,
638:11, 640:9, 641:8,
641:9
**annual** [1] - 625:25
**Answer** [1] - 627:25
**anti** [1] - 653:8
**anti-climber** [1] -
653:8
**anyway** [3] - 642:5,
649:17, 660:11
**appliances** [2] -
650:17, 650:23
**applicable** [1] -
653:24
**application** [1] -
649:20
**apply** [3] - 634:12,
635:18, 654:20
**appropriate** [1] -
667:12
**area** [10] - 630:7,
631:24, 632:4, 635:3,
641:13, 642:19, 642:22,
664:21
**areas** [4] - 628:25,
630:9, 632:12, 641:9
**arguably** [1] - 641:10
**argue** [1] - 647:20
**argument** [1] - 640:18
**arguments** [1] -
662:13
**arrangement** [1] -
654:22
**Association** [1] -
625:14

**assumption** [1] -
665:3
**Astagne** [1] - 628:5
**attention** [1] - 642:11
**Augustine** [2] - 624:2,
628:14
**AUGUSTINE** [1] -
624:3
**Augustus** [1] - 623:18
**Authority** [1] - 625:1
**authority** [1] - 625:2
**authorized** [1] -
625:15
**automatic** [3] - 656:7,
656:8, 656:10
**available** [1] - 650:11
**Avril** [2] - 628:5,
641:24
**aware** [3] - 656:6,
660:9, 667:2

**B**

**Bachelor** [1] - 624:19
**background** [4] -
624:17, 629:22, 636:23,
640:1
**bar** [8] - 633:2,
633:11, 633:15, 634:5,
634:25, 642:5, 652:7,
652:13
**bare** [2] - 635:3,
656:5
**bars** [2] - 650:11,
650:14
**based** [6] - 634:10,
634:11, 644:19, 652:7,
653:21
**basis** [2] - 636:22,
641:20, 641:21, 663:20
**bathroom** [1] -
656:20
**become** [1] - 626:23
**begin** [1] - 662:25
**behalf** [1] - 623:23
**bend** [1] - 652:17
**benefit** [1] - 624:16
**best** [1] - 646:7
**better** [1] - 658:17
**between** [2] - 636:15,
640:15
**beyond** [4] - 638:25,
639:20, 639:22, 642:3
**bible** [1] - 623:21
**big** [1] - 669:14
**billing** [1] - 627:14
**binding** [2] - 634:6,
634:10
**bit** [4] - 626:10,

632:15, 658:2, 660:20
**bond** [1] - 656:3
**Bou** [2] - 628:4,
638:21
**boy** [1] - 624:4
**brakeman** [12] -
625:6, 625:9, 630:16,
630:17, 630:22, 631:7,
631:12, 631:19, 640:3,
640:4, 640:6, 653:2
**break** [2] - 656:20,
656:25, 658:1, 658:8,
661:4
**bridge** [1] - 629:5
**bring** [3] - 642:11,
642:12, 657:12
**broader** [1] - 632:15
**broadly** [1] - 633:19
**brought** [3] - 641:23,
655:17, 669:22
**building** [2] - 650:8,
650:9
**BY** [5] - 624:6,
628:20, 650:2, 654:13,
655:22

**C**

**C.F.R** [3] - 654:14,
654:19
**cannot** [1] - 647:21
**capacity** [1] - 631:11
**car** [21] - 632:21,
635:20, 637:24, 638:14,
638:16, 639:12, 639:17,
639:22, 640:23, 645:23,
646:1, 648:2, 650:4,
650:10, 651:8, 653:6,
653:7, 653:21, 653:24,
654:16, 654:18
**career** [1] - 624:22
**cars** [10] - 631:20,
631:24, 631:25, 638:3,
638:9, 639:11, 639:13,
646:24, 650:23, 652:16
**case** [33] - 629:3,
629:12, 629:16, 629:20,
629:23, 629:25, 630:3,
630:5, 630:11, 633:3,
633:25, 634:2, 634:18,
639:14, 640:24, 646:2,
646:5, 647:24, 657:22,
658:19, 659:25, 660:5,
660:7, 660:16, 665:3,
665:4, 667:5, 667:7,
667:9, 667:22
**cases** [4] - 626:16,
626:18, 632:22, 632:24
**caused** [1] - 634:19

**cell** [1] - 668:14
**Central** [1] - 624:23
**certain** [1] - 642:15
**certainly** [1] - 624:18
**certainty** [2] - 654:3, 654:5
**certified** [10] - 625:7, 625:8, 630:14, 630:15, 630:17, 630:20, 630:22
**challenged** [1] - 633:21
**challenges** [1] - 637:22
**change** [3] - 646:23, 667:20, 669:8
**changed** [1] - 669:10
**changes** [3] - 662:15, 669:11
**charge** [12] - 658:3, 658:4, 658:17, 659:5, 659:23, 660:1, 660:4, 662:5, 664:20, 665:9, 665:16, 669:7
**charged** [1] - 627:3
**choose** [1] - 648:9
**cites** [1] - 667:22
**Civil** [1] - 625:15
**civil** [6] - 624:19, 625:10, 639:25, 640:7, 640:11, 642:8
**claim** [9] - 637:23, 664:5, 664:6, 664:7, 664:10, 664:13, 665:25
**claims** [2] - 646:7, 663:20
**Claims** [2] - 664:2, 664:3
**clearly** [1] - 640:16
**CLERK** [14] - 623:6, 623:19, 623:25, 657:2, 657:8, 657:13, 661:2, 661:19, 662:3, 663:25, 669:16, 669:20, 670:7, 670:19
**Cleveland** [4] - 625:1, 625:2, 625:5, 625:21
**climb** [11] - 638:15, 639:4, 639:7, 639:12, 642:14, 644:20, 644:23, 644:24, 645:7, 646:13, 646:14
**climbed** [27] - 638:14, 642:14, 642:25, 643:3, 643:6, 643:9, 643:12, 643:15, 644:2, 644:6, 644:9, 644:12, 644:14, 645:6, 645:9, 646:1, 646:12, 646:20, 646:25, 647:5, 647:7, 647:8, 647:18, 647:22, 647:23,

648:1, 648:14
**climber** [1] - 653:8
**climbing** [9] - 631:20, 631:21, 638:21, 639:3, 645:19, 648:13, 648:21, 648:23
**climbs** [1] - 639:3
**close** [4] - 647:21, 648:8, 658:20, 662:20
**closing** [4] - 658:5, 659:23, 660:5, 668:8
**closings** [3] - 658:17, 668:15, 670:14
**Code** [2] - 626:1, 650:15
**College** [1] - 625:21
**Columbia** [1] - 625:12
**coming** [1] - 646:6
**commencing** [1] - 670:22
**comments** [1] - 670:1
**Community** [1] - 625:20
**company** [1] - 624:24
**compelling** [1] - 637:11
**Complaint** [1] - 627:25
**completely** [1] - 667:11
**compliance** [6] - 634:6, 640:18, 640:25, 641:1, 654:17, 655:15
**compliant** [3] - 636:4, 639:17, 641:2
**complied** [8] - 633:20, 633:22, 634:21, 634:23, 641:25, 643:4, 643:13, 643:14
**complies** [2] - 639:23, 640:23
**compliments** [1] - 660:6
**comply** [8] - 632:22, 634:10, 635:17, 636:17, 640:18, 641:4, 649:6, 649:9
**concepts** [1] - 629:25
**concerned** [1] - 632:19
**concerning** [2] - 626:12, 637:14
**conclude** [2] - 638:12, 660:22
**conclusions** [1] - 632:20
**conditions** [1] - 638:18
**conduct** [1] - 625:25
**conducted** [1] - 628:7

**conductor** [7] - 630:14, 630:15, 630:18, 639:8, 639:24, 640:3, 640:4
**conductors** [1] - 630:14
**conference** [1] - 662:5
**confident** [1] - 643:4
**confined** [1] - 632:11
**consideration** [1] - 662:12
**construction** [1] - 625:22
**consult** [2] - 624:14, 624:15
**consultant** [1] - 624:12
**contexts** [2] - 635:15, 635:18
**CONTINUED** [1] - 650:1
**contributory** [1] - 664:7
**copies** [2] - 667:25, 669:13
**copy** [2] - 623:9, 668:20
**correct** [8] - 630:12, 630:18, 630:19, 630:24, 631:1, 631:24, 651:2, 654:24
**counsel** [3] - 662:25, 669:1, 669:2
**count** [1] - 662:23
**couple** [1] - 669:15
**coupler** [3] - 652:17, 652:20, 652:22
**couplers** [3] - 656:1, 656:2, 656:9
**coupling** [7] - 655:5, 655:23, 656:1, 656:5, 656:7, 656:8
**course** [2] - 658:12, 661:15
**court** [2] - 649:19, 659:12
**Court** [9] - 623:2, 662:7, 662:14, 662:18, 665:4, 669:12, 670:6, 670:9, 670:20
**COURT** [125] - 623:3, 623:5, 623:6, 623:8, 623:12, 623:15, 623:19, 623:25, 628:15, 628:17, 632:3, 632:6, 632:13, 632:19, 633:9, 633:13, 635:5, 635:8, 635:13, 635:8, 635:11, 635:14, 636:11, 637:5, 637:19,

637:21, 638:1, 638:5, 638:15, 638:19, 640:7, 640:20, 641:7, 641:17, 642:16, 642:18, 642:24, 643:3, 643:12, 643:16, 643:22, 644:1, 644:6, 644:9, 644:12, 644:22, 645:15, 645:17, 646:4, 646:10, 647:3, 647:16, 647:20, 648:20, 649:8, 649:14, 649:16, 649:20, 649:25, 652:25, 655:20, 656:13, 656:17, 656:24, 657:2, 657:4, 657:8, 657:9, 657:12, 657:13, 657:15, 657:21, 657:25, 658:12, 658:15, 658:24, 659:7, 659:13, 659:17, 659:19, 661:2, 661:4, 661:14, 661:18, 661:19, 662:3, 662:4, 663:4, 663:8, 663:10, 663:20, 663:22, 663:24, 664:2, 664:9, 664:12, 664:16, 664:23, 665:1, 665:7, 665:10, 666:2, 666:6, 666:11, 666:14, 666:21, 667:2, 667:17, 667:24, 668:7, 668:10, 668:14, 668:18, 668:20, 668:22, 669:3, 669:6, 669:16, 669:20, 669:21, 670:1, 670:4, 670:7, 670:8, 670:19
**Court's** [1] - 667:16
**Courts** [2] - 628:10, 660:7
**covered** [2] - 642:20, 642:22
**covers** [1] - 654:19
**critical** [1] - 640:21
**criticisms** [1] - 643:1
**criticizing** [1] - 642:15
**CROSS** [1] - 654:12
**cross** [5] - 642:12, 644:23, 645:11, 645:21, 645:24
**cross-examination** [2] - 645:21, 645:24
**CROSS-EXAMINATION** [1] - 654:12
**cross-examine** [2] - 644:23, 645:11
**crossing** [3] - 626:13, 626:14, 629:23
**crossings** [2] - 625:18, 626:12
**cumulative** [2] -

649:16, 649:17
**current** [1] - 624:11
**curve** [1] - 652:16
**curves** [1] - 652:20
**Cuyahoga** [5] - 625:3, 625:4, 625:20, 625:23, 630:23
**CV** [3] - 628:25, 637:1, 637:3

## D

**damages** [3] - 664:22, 665:16, 666:1
**danced** [1] - 634:20
**David** [1] - 624:4
**deals** [1] - 653:14
**Defendant** [3] - 623:18, 623:23, 626:9
**Defendant's** [3] - 668:2, 669:1, 669:17
**Defendants** [1] - 626:8
**deficit** [1] - 638:11
**defined** [1] - 640:17
**degree** [3] - 624:19, 654:3, 654:5
**delay** [1] - 660:1
**deliberate** [3] - 659:24, 660:8, 660:17
**deliberations** [1] - 658:6
**demands** [2] - 628:2, 628:3
**demonstrative** [1] - 623:1
**denies** [5] - 664:5, 664:6, 664:9, 664:10, 664:13
**Dennis** [5] - 628:5, 657:20, 657:21, 659:14, 665:23
**deny** [1] - 647:24
**deposition** [2] - 638:7, 659:14
**depositions** [1] - 628:4
**derailment** [1] - 630:5
**design** [5] - 629:1, 629:3, 629:23, 644:15, 652:24
**designed** [1] - 626:20
**designing** [1] - 624:25
**diamond** [11] - 643:7, 644:5, 644:18, 645:2, 645:13, 645:20, 646:15, 647:6, 653:6, 653:17, 653:20

**difference** [3] - 636:15, 638:23, 646:10

**different** [9] - 640:20, 643:15, 643:20, 644:2, 645:8, 645:23, 647:8, 648:2, 648:6

**difficult** [1] - 652:14

**DiGIULIO** [2] - 647:15, 669:25

**DIRE** [1] - 628:19

**DIRECT** [2] - 624:5, 650:1

**direct** [1] - 648:9

**directly** [3] - 633:11, 651:11, 651:13

**discharge** [1] - 660:14

**discharged** [1] - 660:24

**disclosures** [2] - 627:25, 628:1

**discovery** [1] - 628:3

**discuss** [1] - 662:18

**discussed** [1] - 669:4

**discusses** [1] - 650:21

**discussion** [1] - 661:17

**dismiss** [1] - 658:3, 659:8

**dispute** [2] - 633:21, 640:24

**disputed** [5] - 634:17, 634:18, 635:10, 635:11, 637:20

**disputing** [1] - 633:24

**distance** [1] - 630:2

**distinction** [1] - 640:15

**District** [1] - 625:12

**doctor's** [1] - 667:11

**doctors** [1] - 667:8

**document** [1] - 628:1

**documents** [1] - 654:18

**done** [12] - 626:16, 626:18, 634:1, 634:11, 634:13, 638:17, 638:19, 641:8, 659:2, 659:6, 659:7, 659:17

**door** [12] - 642:21, 643:22, 645:5, 645:18, 646:22, 648:4, 648:13, 648:16, 648:24, 649:9, 649:10, 649:12

**down** [4] - 636:2, 638:14, 638:15, 639:3

**Dr** [8] - 657:19, 657:20, 657:21, 659:14, 665:18, 665:23, 666:9,

666:17

**draft** [3] - 662:9, 662:10

**drink** [1] - 656:20

**duly** [1] - 623:23

**duplicative** [1] - 642:1

**during** [1] - 668:15

**duties** [1] - 625:23

# E

**easier** [2] - 658:25, 662:24

**easily** [1] - 645:1

**eclectic** [1] - 626:21

**edge** [1] - 635:3

**educational** [1] - 624:17

**effect** [1] - 646:8

**either** [3] - 626:17, 626:22, 628:23

**electronics** [1] - 656:4

**employed** [1] - 624:9

**employee** [1] - 626:16

**Employee** [1] - 627:23

**End** [1] - 655:7

**end** [10] - 645:22, 648:1, 650:24, 651:16, 652:10, 652:12, 654:19, 654:23, 655:2, 655:16

**ends** [1] - 659:16

**engineer** [10] - 625:7, 625:8, 625:10, 625:12, 630:20, 631:9, 635:19, 639:24, 640:8, 646:12

**Engineering** [1] - 625:14

**engineering** [6] - 624:20, 624:24, 625:22, 636:1, 640:1, 642:8

**Engineers** [1] - 625:15

**engineers** [1] - 640:11

**engines** [1] - 632:7

**enjoy** [1] - 660:18

**enters** [2] - 623:7, 657:14

**entire** [3] - 644:5, 644:18, 648:17

**entirely** [1] - 645:12

**entitled** [1] - 647:4

**equipment** [3] - 631:3, 631:5, 631:18

**equipped** [1] - 631:21

**error** [2] - 641:9, 645:24

**establish** [3] - 636:21, 639:10, 641:20

**established** [2] - 638:24, 639:21

**evidence** [6] - 637:12, 648:11, 667:10, 669:7, 669:17

**exact** [1] - 647:23

**EXAMINATION** [4] - 624:5, 650:1, 654:12, 655:21

**examination** [2] - 645:21, 645:24

**examine** [3] - 638:6, 644:23, 645:11

**example** [3] - 627:5, 631:19, 649:1

**excused** [2] - 656:13, 656:16

**exhibit** [1] - 623:1

**Exhibit** [9] - 623:2, 652:4, 662:7, 662:18, 669:1, 669:13, 669:17, 670:6, 670:9

**Exhibits** [2] - 662:15, 670:20

**exhibits** [1] - 668:24

**exits** [2] - 657:3, 661:3

**expectation** [1] - 660:21

**experience** [1] - 642:4

**experiment** [1] - 648:6

**experimentation** [1] - 643:2

**expert** [31] - 624:13, 628:10, 628:14, 632:5, 632:8, 632:10, 633:17, 634:3, 634:4, 634:15, 635:11, 636:7, 636:9, 636:13, 637:10, 638:5, 638:9, 638:16, 638:20, 638:22, 639:5, 639:10, 639:13, 640:1, 640:14, 641:7, 642:7, 647:21, 647:25, 649:21, 654:8

**expertise** [20] - 628:25, 630:9, 631:16, 631:17, 631:18, 631:24, 632:12, 633:4, 635:9, 635:19, 636:4, 638:2, 638:25, 639:9, 639:16, 639:18, 641:13, 649:22, 652:24, 653:2

**experts** [1] - 641:24

**explain** [4] - 627:1,

650:20, 651:4, 653:12

**explanation** [1] - 665:2

**express** [2] - 636:20, 666:14

**expressing** [1] - 644:16

**expressly** [1] - 665:4

**extra** [1] - 623:9

# F

**fact** [4] - 638:10, 639:3, 639:12, 667:7

**faculty** [1] - 625:20

**failed** [2] - 637:24

**fair** [6] - 645:18, 645:20, 645:24, 646:16, 658:24, 658:25

**fairly** [1] - 652:20

**fall** [2] - 633:2, 640:10

**familiar** [9] - 626:23, 629:7, 633:8, 650:13, 650:18, 653:9, 655:7, 655:10, 655:23

**family** [1] - 657:16

**famous** [1] - 654:11

**far** [2] - 625:10, 665:12

**Fashauer** [1] - 665:4

**fatalities** [1] - 625:18

**fault** [1] - 665:14

**feature** [3] - 645:6, 646:1, 647:24

**features** [2] - 633:1, 639:11

**February** [1] - 628:8

**Federal** [13] - 626:1, 626:23, 627:2, 627:5, 628:10, 632:23, 633:20, 633:22, 640:11, 650:15, 653:14, 660:7

**final** [6] - 662:20, 669:12, 669:21, 670:8, 670:9, 670:10

**finalize** [1] - 660:1

**fine** [13] - 635:23, 636:3, 638:1, 642:5, 643:5, 643:16, 647:6, 647:22, 649:8, 658:24, 664:12, 664:17, 670:12

**firm** [1] - 624:13

**first** [2] - 662:9, 663:1

**floor** [3] - 665:19, 665:23, 666:10

**Foder** [9] - 628:4, 637:6, 645:7, 645:23, 646:17, 648:2, 648:6, 664:10, 664:13

**Foder's** [5] - 637:9, 638:19, 647:9, 664:5, 664:9

**follow** [4] - 626:15, 627:4, 627:7, 667:11

**followed** [1] - 667:8

**following** [5] - 631:19, 632:18, 649:19, 658:13, 659:12

**follows** [1] - 623:24

**foot** [9] - 636:2, 641:11, 643:7, 643:10, 644:5, 644:18, 645:12, 646:15, 647:6

**Forensic** [1] - 624:12

**forewarned** [1] - 648:12

**forget** [1] - 627:14

**form** [1] - 656:3

**forth** [1] - 664:6

**foundation** [1] - 644:4

**FRA** [18] - 627:8, 629:7, 633:23, 633:24, 634:2, 634:9, 639:17, 640:1, 640:16, 640:19, 641:2, 641:25, 643:4, 643:13, 643:14, 650:14, 651:14, 653:16

**FRA-compliant** [1] - 641:2

**free** [1] - 659:9

**friction** [5] - 637:22, 638:11, 640:8, 640:9, 640:10

**Friday** [1] - 670:21

**full** [3] - 623:25, 624:2, 645:18

# G

**game** [1] - 646:16

**gentlemen** [2] - 656:17, 659:20

**George** [2] - 628:6, 628:7

**given** [3] - 651:6, 659:24, 667:3

**govern** [1] - 653:16

**governmental** [1] - 637:13

**grab** [4] - 650:11, 650:14, 652:7, 652:13

**grade** [5] - 625:18, 626:12, 626:13, 626:14, 629:22

**gratitude** [2] - 660:23

**Greater** [1] - 625:1

**Gregory** [1] - 628:5

**Greisberg** [2] - 665:18, 666:17
**Greisberg's** [1] - 666:9
**grip** [35] - 633:1, 633:7, 633:14, 634:5, 634:16, 634:19, 634:25, 635:3, 635:18, 635:20, 635:21, 635:24, 636:2, 637:5, 641:10, 642:4, 642:20, 642:22, 643:10, 644:3, 644:7, 644:10, 644:15, 644:25, 645:2, 645:3, 645:9, 645:19, 645:22, 646:16, 647:1, 647:9, 648:18, 648:24
**ground** [1] - 651:19
**guess** [5] - 633:18, 638:10, 640:12, 647:11, 665:14
**guidance** [1] - 637:13
**guide** [1] - 630:13
**guidelines** [6] - 639:17, 639:18, 639:19, 639:23, 654:21
**Guidelines** [1] - 640:2
**guiding** [1] - 646:6
**guy** [3] - 635:22, 646:12, 667:6
**guys** [4] - 641:25, 660:2, 661:4, 670:9

## H

**half** [6] - 630:7, 630:8, 657:24, 657:25, 660:10, 670:14
**hand** [2] - 623:20, 623:21
**handed** [1] - 623:10
**handhold** [1] - 651:9
**Handholds** [1] - 655:8
**handholds** [6] - 650:23, 651:1, 654:25, 655:1, 655:5, 655:16
**hard** [2] - 649:2, 660:19
**heads** [1] - 667:21
**Health** [1] - 653:13
**hear** [1] - 662:21
**heard** [1] - 636:5
**help** [1] - 656:10
**helpful** [2] - 639:2, 641:2
**high** [1] - 651:19
**higher** [1] - 651:5
**highway** [1] - 629:22
**himself** [1] - 666:4

**hit** [1] - 626:13
**hold** [2] - 659:25, 660:10
**holds** [1] - 652:17
**home** [2] - 669:13, 670:17
**Honor** [10] - 628:13, 628:18, 642:11, 646:6, 652:23, 657:5, 657:11, 658:10, 663:2, 666:23
**hope** [1] - 660:21
**hopefully** [2] - 654:10, 670:15
**hose** [1] - 656:9
**hour** [7] - 627:15, 657:24, 657:25, 658:2, 660:4, 660:10, 670:14
**hours** [1] - 660:10
**human** [1] - 641:8

## I

**identification** [1] - 670:20
**impact** [1] - 643:25
**impeachment** [4] - 646:7, 646:11, 647:12, 647:13
**improvement** [1] - 629:5
**inches** [1] - 651:25
**include** [2] - 626:3, 650:25
**incompetent** [1] - 640:10
**incorporate** [1] - 669:10
**incorporated** [1] - 662:15
**independent** [8] - 624:12, 634:25, 636:18, 636:22, 641:3, 641:13, 641:20, 660:17
**industrial** [1] - 653:15
**information** [1] - 654:21
**initial** [3] - 624:3, 627:25, 628:1
**injuries** [1] - 625:17
**Injury** [1] - 627:23
**injury** [1] - 626:16
**inspect** [4] - 632:17, 637:24, 639:16, 639:19
**inspected** [4] - 632:21, 639:16, 639:22, 647:5
**inspection** [14] - 628:8, 630:5, 631:15, 631:23, 631:25, 638:3,

648:17, 648:19, 648:22, 649:9, 650:4, 650:6, 652:14, 653:21
**Inspection** [1] - 629:10
**inspections** [1] - 627:7
**inspector** [3] - 625:6, 627:8, 631:21
**instruction** [2] - 664:19, 666:14
**instructions** [9] - 662:10, 662:22, 663:17, 667:8, 667:11, 667:21, 668:2, 668:6
**interesting** [1] - 657:17
**international** [1] - 626:19
**interrogatories** [2] - 628:2, 628:4
**investigations** [1] - 630:2
**involve** [1] - 629:16
**involved** [1] - 626:19
**involving** [2] - 629:12, 630:2
**issue** [6] - 633:25, 634:21, 634:24, 642:10, 664:18
**issues** [3] - 626:17, 652:24, 657:22

## J

**job** [2] - 624:11, 640:13
**Judge** [1] - 661:7
**judge** [2] - 635:7, 661:10
**jury** [25] - 623:2, 623:3, 623:7, 624:16, 627:1, 639:2, 639:6, 643:23, 645:1, 647:3, 650:20, 653:12, 657:3, 657:7, 657:12, 657:14, 658:3, 659:20, 661:3, 663:17, 667:24, 667:25, 668:20, 669:19, 670:11
**Jury** [1] - 662:2
**jury's** [1] - 646:24

## K

**keeping** [1] - 627:10
**Kenneth** [1] - 628:5
**knowing** [1] - 645:22
**knowledgeable** [2] - 630:13, 631:13

**knows** [5] - 636:10, 636:14, 638:25, 639:19, 640:2
**knuckle** [2] - 656:2

## L

**lacking** [1] - 645:6
**ladies** [2] - 656:17, 659:20
**language** [2] - 665:5, 667:13
**last** [3] - 624:3, 654:11, 664:20
**latter** [1] - 636:20
**Laughter** [5] - 628:24, 659:4, 668:12, 668:16, 668:19
**law** [1] - 636:4
**LAW** [1] - 663:25
**lawyers** [2] - 659:21, 660:24
**lay** [2] - 632:24, 644:4
**learn** [1] - 640:11
**learned** [1] - 640:12
**least** [1] - 647:25
**leave** [1] - 668:23
**leaving** [1] - 624:23
**left** [1] - 623:21
**legal** [2] - 626:4, 633:16
**lesion** [1] - 665:20
**less** [2] - 640:16, 660:5
**level** [1] - 643:17
**licensed** [1] - 625:11
**life** [1] - 646:13
**Lifesaver** [1] - 625:16
**limit** [1] - 649:21
**line** [4] - 635:23, 642:6, 664:14, 667:20
**lines** [4] - 649:5, 656:9, 656:10
**listen** [1] - 668:11
**lists** [1] - 628:25
**locomotives** [1] - 631:20
**look** [8] - 635:17, 636:18, 640:22, 650:10, 651:16, 656:2, 669:9
**looked** [7] - 628:6, 632:20, 634:8, 649:5, 651:8, 653:5, 653:23
**looking** [3] - 632:7, 632:8, 640:21
**loop** [2] - 651:16
**lunch** [4] - 656:25, 658:1, 660:6, 670:15
**Luncheon** [1] -

661:20

## M

**maintain** [2] - 631:2, 637:24
**Maintenance** [1] - 625:14
**maintenance** [4] - 631:15, 631:23, 638:3, 638:9
**maintenance'** [1] - 637:14
**manual** [4] - 655:23, 656:1, 656:5, 656:7
**marathons** [1] - 667:6
**mark** [4] - 662:6, 662:18, 670:4
**marked** [10] - 652:3, 662:8, 662:9, 662:10, 663:11, 669:12, 669:17, 670:6, 670:20
**materials** [1] - 627:20
**matter** [3] - 637:16, 646:2, 670:21
**matters** [3] - 624:14, 624:15, 626:4
**mean** [3] - 632:6, 634:18, 635:2, 636:25, 637:9, 639:15, 639:25, 646:23, 648:18, 666:23, 667:2, 667:3
**means** [3] - 632:13, 651:4, 651:5
**measures** [2] - 643:24, 646:22
**mechanical** [1] - 656:4
**medical** [3] - 657:22, 669:2
**meet** [1] - 661:6
**meeting** [1] - 628:23
**member** [1] - 625:13
**mention** [2] - 653:17, 668:25
**mentioned** [1] - 629:14
**met** [1] - 628:21
**metal** [2] - 635:3, 656:5
**middle** [2] - 624:3, 625:4
**might** [4] - 641:18, 651:23, 658:16, 660:12
**mind** [1] - 623:12
**minimum** [2] - 632:25, 634:1
**MINO** [60] - 623:11, 623:14, 623:17, 624:6,

628:13, 632:5, 632:17, 633:6, 633:10, 634:8, 635:2, 635:6, 635:13, 636:9, 637:4, 637:23, 638:13, 638:17, 640:15, 642:25, 643:6, 643:14, 643:19, 644:4, 644:8, 644:17, 645:12, 645:16, 646:3, 646:5, 647:11, 647:19, 648:15, 649:4, 649:11, 649:24, 650:2, 653:4, 654:9, 655:22, 656:12, 656:23, 657:10, 657:20, 657:24, 658:19, 658:23, 659:18, 665:12, 664:4, 666:8, 666:13, 666:17, 668:4, 668:8, 668:13, 668:21, 668:25, 669:4, 669:24

**minute** [2] - 632:16, 669:22
**minutes** [6] - 656:22, 657:4, 669:15, 670:13, 670:15
**missing** [1] - 639:15
**mitigation** [3] - 665:16, 667:3, 667:12
**mix** [2] - 626:8, 626:9
**model** [1] - 652:15
**modern** [1] - 657:16
**modifications** [2] - 662:17, 670:2
**moment** [1] - 658:11
**Monday** [1] - 670:16
**morning** [6] - 623:8, 624:7, 656:19, 660:12, 660:20, 662:17
**most** [1] - 653:15
**motorist** [1] - 626:15
**move** [2] - 652:12, 652:21
**movie** [3] - 657:16, 657:23, 658:1
**movie's** [1] - 659:9
**MR** [125] - 623:1, 623:4, 623:11, 623:14, 623:17, 624:6, 628:13, 628:16, 628:18, 628:20, 632:1, 632:5, 632:11, 632:17, 633:6, 633:10, 633:23, 634:8, 635:2, 635:6, 635:7, 635:10, 635:13, 636:9, 637:2, 637:4, 637:18, 637:20, 637:23, 638:2, 638:13, 638:17, 640:5, 640:15, 641:6, 641:15, 642:10, 642:17, 642:19, 642:25, 643:1, 643:6, 643:11, 643:14, 643:19, 643:20,

643:25, 644:4, 644:8, 644:11, 644:17, 644:19, 645:12, 645:16, 646:3, 646:5, 647:2, 647:11, 647:14, 647:15, 647:19, 648:15, 649:4, 649:11, 649:12, 649:15, 649:24, 650:2, 652:23, 653:4, 654:9, 654:10, 654:13, 655:19, 655:22, 656:12, 656:23, 657:5, 657:10, 657:11, 657:20, 657:24, 658:10, 658:14, 658:16, 658:19, 658:21, 658:23, 659:5, 659:11, 659:18, 661:13, 663:1, 663:6, 663:9, 663:14, 663:21, 663:23, 664:3, 664:11, 664:15, 664:17, 664:25, 665:6, 665:9, 665:12, 666:4, 666:8, 666:13, 666:17, 666:22, 667:15, 667:23, 668:3, 668:4, 668:8, 668:13, 668:17, 668:21, 668:25, 669:4, 669:23, 669:24, 669:25, 670:3

**N**

**name** [3] - 623:25, 624:2, 624:3
**narrow** [1] - 632:10
**narrowest** [1] - 662:22
**National** [1] - 625:5
**national** [1] - 625:16
**nature** [1] - 652:19
**need** [12] - 633:14, 633:15, 634:19, 635:3, 635:24, 636:2, 641:10, 642:4, 655:18, 663:3, 663:7, 663:13
**needed** [1] - 633:2
**needs** [1] - 632:9
**negligence** [5] - 635:16, 641:1, 664:7, 664:8, 664:21
**Netflix** [2] - 668:17, 668:18
**never** [1] - 633:21, 634:6, 634:17, 640:25, 641:6, 641:15, 661:9
**new** [1] - 663:12
**Newark** [1] - 650:7
**next** [2] - 641:3, 643:17
**night's** [1] - 670:17
**nine** [1] - 625:12

**nitpicky** [1] - 658:16
**non** [2] - 653:19, 653:20
**non-slip** [2] - 653:19, 653:20
**nonprofit** [1] - 625:16
**normal** [1] - 638:18
**note** [1] - 667:17
**noted** [1] - 667:17
**nothing** [8] - 636:12, 637:7, 639:6, 654:9, 654:21, 654:23, 655:2, 656:12
**nothing's** [1] - 663:12
**November** [1] - 670:21
**number** [2] - 626:18, 627:5, 630:8
**numbers** [1] - 642:18

**O**

**objected** [1] - 662:13
**objection** [12] - 628:15, 632:1, 649:13, 652:23, 663:12, 663:14, 663:16, 663:18, 664:25, 665:9, 665:13, 667:18
**objections** [2] - 663:2, 663:10
**objects** [1] - 667:15
**observed** [1] - 648:25
**obvious** [1] - 661:9
**Occupational** [2] - 627:23, 653:13
**Occurrence** [1] - 627:24
**offer** [4] - 628:14, 641:13, 641:15, 657:21
**offered** [3] - 647:16, 647:17, 647:19
**offhand** [1] - 655:12
**Ohio** [1] - 625:2
**on-track** [1] - 626:2
**one** [13] - 623:12, 626:18, 642:10, 651:25, 652:18, 653:19, 656:10, 662:23, 663:6, 666:24, 667:13, 668:20, 669:8
**One** [1] - 642:13
**one's** [1] - 633:24
**ones** [2] - 662:17, 663:4
**open** [12] - 643:22, 645:5, 647:1, 648:4, 648:12, 648:16, 648:24, 649:8, 649:10, 649:12, 649:19, 659:12
**opened** [1] - 646:21

**opening** [1] - 645:18
**opens** [2] - 642:21, 642:24
**operate** [5] - 631:5, 631:7, 631:9, 636:18, 656:10
**operated** [1] - 652:15
**operating** [3] - 626:17, 631:13, 631:18
**Operation** [1] - 625:16
**operations** [1] - 630:3
**opine** [3] - 636:5, 636:19, 641:20
**opining** [3] - 633:4, 635:24, 634:15
**opinion** [11] - 634:4, 634:16, 636:20, 637:9, 637:10, 641:5, 641:13, 653:22, 654:2, 655:14
**opinions** [2] - 642:13, 642:21
**opportunity** [3] - 647:25, 659:24, 660:16
**opposed** [2] - 636:6, 636:17
**order** [2] - 648:16, 660:6
**organization** [1] - 625:17
**originally** [1] - 659:25
**orthotic** [3] - 665:19, 665:23, 666:10
**OSHA** [6] - 633:20, 653:10, 653:12, 653:13, 653:17, 653:18
**osteochondral** [1] - 665:20
**outside** [1] - 650:8
**outstanding** [1] - 624:8
**overseeing** [1] - 627:3
**owns** [1] - 625:24

**P**

**page** [8] - 637:6, 663:22, 663:24, 663:25, 664:2, 664:4, 665:13
**paid** [1] - 627:11
**paragraph** [2] - 665:2, 667:13
**Park** [2] - 625:5, 625:24
**Part** [4] - 626:1, 627:5, 650:17, 650:18
**part** [2] - 663:11, 666:1

**particular** [3] - 647:8, 650:22, 651:14
**particularly** [1] - 637:10
**Parties'** [2] - 664:2, 664:3
**passenger** [1] - 650:23
**PATH** [25] - 627:17, 632:21, 633:21, 641:23, 650:4, 650:10, 651:8, 652:19, 653:5, 653:6, 653:21, 653:24, 654:19, 655:15, 656:6, 661:14, 664:5, 664:6, 664:9, 665:13, 665:14, 665:16, 667:8, 669:1
**PATH's** [6] - 627:25, 628:1, 628:2, 628:3, 664:10, 664:13
**Penn** [1] - 624:22
**people** [1] - 641:23
**per** [4] - 634:1, 635:16, 637:7, 641:1
**perfect** [2] - 658:7, 669:3
**perfectly** [2] - 636:3, 647:22
**periodically** [1] - 627:8
**perspective** [1] - 631:7
**Petrie** [1] - 646:5
**phones** [1] - 668:14
**photo** [1] - 652:7
**photographs** [1] - 628:6
**physically** [1] - 668:6
**pickup** [1] - 631:22
**place** [6] - 623:20, 632:18, 649:19, 650:6, 658:13, 659:12
**placement** [2] - 633:7, 650:14
**places** [1] - 644:5
**Plaintiff** [7] - 626:9, 664:6, 664:8, 665:22, 665:25, 667:8, 667:15
**Plaintiff's** [9] - 627:24, 627:25, 628:1, 628:2, 652:4, 662:25, 664:18, 667:21, 668:2
**Plaintiff-Defendant** [1] - 626:9
**Plaintiffs** [1] - 626:8
**plate** [9] - 643:8, 644:5, 644:18, 645:13, 646:15, 647:6, 653:6, 653:17, 653:20
**play** [4] - 644:8,

645:13, 645:15, 657:17
**playback** [1] - 659:16
**played** [1] - 659:15
**point** [3] - 635:8, 644:1, 663:16
**popped** [1] - 661:10
**posed** [1] - 666:19
**possible** [1] - 652:12
**practice** [1] - 641:9
**presented** [1] - 637:12
**preserved** [4] - 662:14, 663:3, 663:5, 663:11
**pretty** [1] - 626:21
**prevent** [1] - 633:2
**previously** [1] - 628:9
**private** [1] - 624:24
**problems** [1] - 634:20
**procedures** [2] - 626:15, 629:18
**proceed** [1] - 623:16
**professional** [1] - 625:11
**proffer** [1] - 667:3
**program** [1] - 625:22
**proper** [4] - 626:14, 626:15, 627:9, 633:17
**properly** [4] - 626:20, 633:20, 637:24, 637:25
**proposal** [1] - 662:11
**protection** [1] - 626:14
**provide** [1] - 627:4
**pulled** [1] - 669:4
**put** [18] - 636:2, 641:11, 643:7, 643:9, 644:18, 645:12, 645:20, 646:3, 646:15, 647:6, 663:6, 664:23, 665:17, 667:12, 667:13, 667:18, 667:19, 668:24
**putting** [1] - 663:18

## Q

**qualified** [10] - 629:18, 631:2, 631:5, 631:12, 632:3, 632:5, 633:16, 636:1, 641:21, 649:23
**qualify** [6] - 632:9, 638:20, 638:21, 642:7, 642:9, 649:21
**qualifying** [1] - 636:24
**quarter** [1] - 651:25
**questions** [2] - 628:16, 670:1

**quick** [1] - 669:9
**quotes** [1] - 667:22
**quoting** [1] - 651:24

## R

**radio** [1] - 629:18
**rail** [8] - 629:18, 629:22, 630:2, 631:20, 631:23, 631:25, 638:3, 651:25
**rail-highway** [1] - 629:22
**railroad** [24] - 624:21, 625:18, 626:22, 627:9, 630:11, 631:2, 631:5, 631:13, 632:5, 632:10, 636:6, 636:7, 636:9, 636:11, 636:12, 638:8, 639:8, 640:12, 642:7, 649:22, 650:17, 652:15, 653:16, 654:6
**Railroad** [6] - 624:23, 625:4, 625:24, 626:23, 627:2, 630:23
**railroads** [5] - 624:15, 627:3, 636:14, 639:1, 653:2
**Railway** [1] - 625:13
**railway** [1] - 629:25
**raise** [1] - 623:20
**raised** [1] - 665:15
**rate** [1] - 627:14
**rather** [1] - 662:7
**read** [1] - 670:13
**reading** [1] - 663:1
**ready** [2] - 658:19, 669:14
**real** [2] - 634:24, 652:16
**really** [8] - 635:21, 636:1, 654:19, 655:17, 662:21, 662:23, 663:16, 667:9
**reason** [3] - 645:10, 646:25, 659:2
**reasonable** [3] - 636:3, 654:2, 654:5
**reasonably** [1] - 636:19, 639:13, 643:17
**reasons** [1] - 661:9
**recess** [3] - 657:6, 661:20, 669:18
**recognizing** [1] - 662:13
**recommendations** [1] - 653:19
**record** [10] - 624:1, 646:3, 661:15, 661:16,

661:17, 662:4, 662:14, 663:5, 663:10, 663:12
**records** [2] - 666:9, 669:2
**recurrent** [1] - 626:1
**REDIRECT** [1] - 655:21
**reduce** [1] - 625:17
**reference** [1] - 654:19
**regard** [1] - 641:22
**regarding** [3] - 624:15, 655:16, 657:22
**Regional** [1] - 625:1
**regulation** [14] - 627:5, 634:11, 634:13, 635:16, 637:13, 641:4, 641:14, 641:22, 641:24, 650:20, 650:22, 651:6, 654:6, 654:17
**Regulations** [2] - 626:1, 650:16
**regulations** [43] - 627:4, 632:21, 632:23, 633:6, 633:8, 633:10, 633:17, 633:20, 633:22, 633:23, 634:4, 634:7, 634:10, 634:22, 634:23, 635:1, 635:15, 635:23, 635:24, 636:6, 636:8, 636:10, 636:11, 636:15, 636:16, 636:17, 636:18, 637:16, 638:8, 638:25, 640:12, 640:16, 640:22, 640:23, 642:1, 642:8, 647:9, 649:10, 649:22, 650:13, 653:16, 653:25
**rehabilitation** [1] - 625:25
**Reich** [1] - 628:5
**release** [1] - 659:22
**remedial** [4] - 643:24, 646:22, 647:12, 647:17
**remediation** [1] - 648:5
**remember** [1] - 628:23
**remind** [1] - 660:15
**renovation** [1] - 647:3
**repair** [5] - 629:5, 637:14, 647:13, 647:17
**report** [15] - 623:9, 627:17, 627:19, 627:20, 628:6, 632:7, 632:8, 632:15, 636:12, 641:17, 642:5, 643:7, 643:11, 648:10, 651:24
**Report** [2] - 627:23, 627:24
**require** [7] - 633:7, 635:15, 635:18, 636:7,

636:10, 637:18, 637:19
**required** [4] - 632:21, 635:6, 635:12, 635:13
**requirement** [2] - 650:25, 651:3
**requires** [3] - 633:11, 634:4, 634:5
**research** [1] - 660:17
**respect** [1] - 653:23
**respond** [1] - 634:15
**response** [3] - 628:1, 628:2, 628:3
**responses** [1] - 628:3
**responsibility** [1] - 660:15
**rest** [1] - 660:18
**resume** [1] - 660:18
**retained** [1] - 667:16
**retainer** [1] - 666:15
**reversible** [1] - 645:24
**review** [2] - 627:19, 627:22
**reviewed** [1] - 627:23
**ride** [1] - 627:8
**rides** [1] - 631:22
**rise** [10] - 623:6, 657:2, 657:8, 657:13, 661:2, 661:19, 662:3, 669:16, 669:20, 670:19
**risk** [1] - 665:3
**roadway** [1] - 626:2
**Roadway** [1] - 629:14
**Robert** [3] - 657:20, 657:21, 659:14
**Robson** [4] - 624:12, 626:7, 626:11, 626:23
**room** [6] - 623:2, 623:3, 648:14, 660:21, 667:25, 668:20
**ROSENTHAL** [63] - 623:1, 623:4, 628:16, 628:18, 628:20, 632:1, 632:11, 633:23, 635:7, 635:10, 637:2, 637:18, 637:20, 638:2, 640:5, 641:6, 641:15, 642:10, 642:17, 642:19, 643:1, 643:11, 643:20, 643:25, 644:11, 644:19, 647:2, 647:14, 649:12, 649:15, 652:23, 654:10, 654:13, 655:19, 657:5, 657:11, 658:10, 658:14, 658:16, 658:21, 659:5, 659:11, 661:13, 663:1, 663:6, 663:9, 663:14, 663:21, 663:23, 664:3, 664:14, 664:15, 664:17, 664:25, 665:6, 665:9, 666:22,

636:10, 637:18, 637:19
**required** [4] - 632:21, 635:6, 635:12, 635:13
667:15, 667:23, 668:3, 668:17, 669:23, 670:3
**rules** [5] - 629:7, 630:13, 631:13, 631:17, 631:19
**ruling** [1] - 667:16
**run** [3] - 638:11, 667:5, 667:6
**rung** [1] - 651:25
**runs** [1] - 625:4
**runway** [1] - 626:20

## S

**safe** [22] - 627:10, 632:25, 634:17, 634:21, 634:22, 634:23, 635:20, 636:6, 636:19, 639:13, 641:5, 641:11, 642:13, 643:18, 644:3, 644:13, 644:17, 645:8, 647:22, 670:17
**safely** [3] - 644:23, 646:13, 647:5
**safer** [2] - 634:16, 645:8
**safest** [1] - 646:7
**safety** [48] - 626:2, 627:6, 627:8, 629:23, 632:21, 632:23, 633:1, 633:8, 633:10, 634:5, 635:19, 635:25, 636:1, 636:8, 636:10, 636:11, 636:12, 636:13, 636:14, 636:16, 636:22, 636:23, 638:9, 638:22, 638:25, 639:9, 639:10, 640:14, 640:16, 640:19, 641:7, 641:20, 642:3, 642:7, 642:9, 645:6, 646:1, 647:23, 648:1, 648:3, 649:22, 650:17, 650:22, 653:15, 653:24, 654:6
**Safety** [1] - 653:13
**Sandra** [1] - 628:4
**saw** [1] - 654:1
**Scenic** [3] - 625:3, 625:24, 630:22
**schedule** [1] - 656:18
**Science** [1] - 624:19
**scope** [2] - 633:18, 652:24
**Scotland** [1] - 659:3
**se** [3] - 635:16, 637:7, 641:1
**section** [2] - 651:14, 654:22
**sections** [1] - 653:18

security [1] - 645:22
see [17] - 627:9, 632:8, 633:4, 634:15, 638:19, 639:20, 640:20, 642:24, 652:5, 655:9, 657:4, 660:24, 661:11, 663:4, 665:24, 668:1, 670:18
send [1] - 668:20
sense [5] - 658:9, 659:22, 661:6, 664:12, 664:23
Service [1] - 625:24
set [3] - 656:18, 656:24, 664:6
settings [2] - 653:15
settlement [1] - 661:8
sharp [2] - 652:16, 652:20
sheet [2] - 662:10, 669:10
shop [1] - 650:7
short [1] - 654:11
show [5] - 642:2, 647:17, 647:18, 647:19, 652:3
side [3] - 630:11, 652:18, 655:2
sidebar [4] - 632:16, 632:18, 658:11, 658:13
signal [1] - 656:9
signaling [1] - 629:25
SILAGI [1] - 663:25
sill [1] - 655:1
simply [2] - 651:5, 656:4
sit [1] - 655:10
site [3] - 628:7, 650:4, 650:6
sitting [1] - 660:2
six [2] - 637:6, 664:14
sleep [1] - 670:17
slight [1] - 667:4
slip [2] - 653:19, 653:20
small [1] - 662:21
smooth [1] - 646:17
smoothly [1] - 660:3
Society [1] - 625:15
solely [2] - 644:19, 644:20
someone [2] - 626:13, 635:25
somewhere [2] - 637:4, 652:2
sorry [1] - 625:11
sort [1] - 634:20
sound [1] - 636:22
sounds [2] - 636:7, 640:2

speaking [1] - 633:19
specially [1] - 631:21
specifically [1] - 650:18
specificity [1] - 651:6
speed [1] - 630:2
spell [1] - 624:1
spent [1] - 624:23
stairs [3] - 639:4, 639:5, 639:6
stand [1] - 647:5
standards [1] - 627:6
started [2] - 624:22, 642:12
state [2] - 623:25, 628:10
statements [3] - 658:5, 659:23, 660:6
states [1] - 625:12
station [1] - 629:5
status [1] - 647:18
step [14] - 641:3, 651:1, 651:4, 651:7, 651:9, 651:11, 651:13, 651:16, 652:10, 652:12, 652:21, 654:20, 654:23
steps [3] - 650:23, 655:1, 655:2
Steven [1] - 628:4
still [2] - 634:12, 663:18
straight [1] - 636:2
structure [2] - 629:1, 629:3
struggled [1] - 664:20
study [1] - 641:9
stuff [1] - 636:14
Subpart [1] - 629:7
subsequent [4] - 643:24, 646:22, 647:12, 647:17
subway [1] - 624:25
suggestion [1] - 664:4
suggests [1] - 636:13
Summons [1] - 627:24
Supervision [1] - 629:10
surface [4] - 636:3, 646:17, 653:19, 653:20
swim [1] - 667:6
swing [2] - 652:18, 652:20
sworn [1] - 623:23
symmetrical [2] - 633:15, 634:5
Syracuse [1] - 624:20
system [1] - 652:19

T

table [1] - 661:8
talks [11] - 632:20, 636:25, 637:21, 637:23, 638:13, 645:19, 646:6, 650:22, 653:18, 655:2, 655:4
tape [38] - 633:1, 633:7, 633:14, 634:5, 634:16, 634:19, 634:25, 635:4, 635:19, 635:20, 635:21, 635:25, 636:2, 637:6, 637:8, 641:10, 642:4, 642:20, 642:22, 643:10, 644:3, 644:7, 644:10, 644:15, 644:25, 645:2, 645:3, 645:9, 645:19, 645:22, 646:17, 647:1, 647:9, 648:1, 648:3, 648:18, 648:25
teach [1] - 625:21
teaching [1] - 625:21
technically [1] - 637:7
technology [1] - 625:22
ten [1] - 670:12
tendinitis [3] - 665:20, 665:21, 666:19
term [1] - 631:23
terms [2] - 632:23, 655:1
test [2] - 645:25
testified [9] - 623:24, 632:12, 634:8, 640:5, 653:9, 654:14, 665:22, 665:23, 666:4
testify [14] - 626:8, 628:9, 631:11, 631:14, 633:12, 633:13, 633:14, 633:18, 633:19, 634:15, 638:17, 639:20, 646:9, 646:11
testifying [1] - 626:3
testimony [12] - 633:18, 640:9, 648:11, 654:16, 657:19, 657:22, 665:18, 666:2, 666:6, 666:8, 666:12, 666:17
testing [2] - 642:16, 642:17
THE [127] - 623:3, 623:5, 623:6, 623:8, 623:12, 623:15, 623:19, 623:25, 624:2, 628:15, 628:17, 632:3, 632:6, 632:13, 632:19, 633:9, 633:13, 633:24, 634:14,

635:5, 635:8, 635:11, 635:14, 636:11, 637:5, 637:19, 637:21, 638:1, 638:5, 638:15, 638:19, 640:7, 640:20, 641:7, 641:17, 642:16, 642:18, 642:24, 643:3, 643:12, 643:16, 643:22, 644:1, 644:6, 644:9, 644:12, 644:22, 645:15, 645:17, 646:4, 646:10, 647:3, 647:16, 647:20, 648:20, 649:8, 649:14, 649:16, 649:20, 649:25, 652:25, 655:20, 656:13, 656:15, 656:17, 656:24, 657:2, 657:4, 657:8, 657:9, 657:12, 657:13, 657:15, 657:21, 657:25, 658:12, 658:15, 658:24, 659:7, 659:13, 659:17, 659:19, 661:2, 661:4, 661:14, 661:18, 661:19, 662:3, 662:4, 663:4, 663:8, 663:10, 663:20, 663:22, 663:24, 664:2, 664:9, 664:12, 664:16, 664:23, 665:1, 665:7, 665:10, 666:2, 666:6, 666:11, 666:14, 666:21, 667:2, 667:17, 667:24, 668:7, 668:10, 668:14, 668:18, 668:20, 668:22, 669:3, 669:6, 669:16, 669:20, 669:21, 670:1, 670:4, 670:7, 670:8, 670:19
the.. [1] - 637:14
therefore [2] - 634:22, 642:23
thinks [1] - 637:10
tibial [3] - 665:19, 665:21, 666:18
tie [1] - 640:10
Title [1] - 650:16
today [4] - 627:11, 658:1, 658:20, 668:23
together [2] - 652:18, 656:3, 658:18
Tomorrow [1] - 658:5
tomorrow [14] - 658:21, 658:25, 659:10, 659:22, 660:3, 660:11, 660:16, 660:19, 660:22, 660:25, 669:14, 670:11, 670:18
tonight [1] - 659:3
took [1] - 662:12
top [2] - 633:2, 651:25
totally [2] - 659:2,

659:7
track [14] - 625:6, 625:25, 626:2, 626:17, 627:6, 627:7, 627:8, 627:10, 628:25, 629:3, 629:5, 629:10, 631:21, 631:22
tracks [2] - 625:19, 625:25
traffic [1] - 660:20
train [49] - 631:9, 634:21, 637:7, 637:8, 640:22, 642:4, 642:13, 642:14, 643:4, 643:15, 643:21, 644:2, 644:6, 644:9, 644:13, 644:14, 644:20, 644:21, 645:5, 645:7, 645:8, 645:9, 645:19, 646:13, 646:14, 646:20, 646:25, 647:5, 647:7, 647:8, 647:18, 647:22, 647:23, 648:6, 648:13, 648:17, 648:21, 648:22, 648:23, 649:5, 649:6, 650:10, 651:17, 653:6, 653:7, 653:21, 653:24, 656:10
trained [1] - 641:24
training [1] - 626:1
trainman [2] - 625:6, 631:20
trains [3] - 639:3, 639:8, 646:12
Transit [1] - 625:1
transit [1] - 625:2
transportation [1] - 650:16
trial [1] - 661:9
trip [1] - 670:17
truck [1] - 631:22
true [2] - 647:14, 647:25
trying [3] - 632:9, 640:17, 658:25
two [4] - 630:9, 640:20, 641:25, 652:16, 652:17, 656:1, 658:9, 660:10
type [1] - 624:14

U

UB [1] - 624:4
Ubaldi [7] - 623:18, 624:3, 624:7, 628:14, 628:21, 649:21, 650:3
ultimate [1] - 649:4
unable [1] - 642:23
under [1] - 641:21

**underneath** [1] - 652:13

**University** [1] - 624:20

**unless** [3] - 636:21, 641:19, 642:2

**unlike** [1] - 646:17

**Unusual** [1] - 627:24

**up** [26] - 623:19, 638:14, 638:15, 639:3, 639:4, 639:12, 640:10, 642:25, 643:3, 643:6, 643:9, 643:12, 643:15, 644:2, 644:6, 644:9, 644:13, 644:14, 644:20, 645:7, 646:25, 648:1, 655:17, 656:18, 656:24, 661:12

## V

**Valley** [4] - 625:3, 625:5, 625:23, 630:23

**value** [3] - 649:14, 649:15, 660:9

**various** [1] - 626:16

**Velez** [1] - 628:5

**velocity** [1] - 642:16

**verdict** [3] - 662:10, 669:10, 670:16

**version** [1] - 669:21

**vestibule** [1] - 650:24

**video** [2] - 656:19, 656:24

**videotaped** [1] - 659:14

**violate** [2] - 651:14, 654:22

**violated** [1] - 653:24

**violations** [1] - 654:1

**voiced** [1] - 663:17

**VOIR** [1] - 628:19

**volunteer** [5] - 625:3, 625:15, 625:23, 630:25, 639:8

## W

**wait** [1] - 644:9

**waiting** [1] - 660:2

**waived** [1] - 663:12

**Wallace** [1] - 628:5

**warning** [1] - 645:18

**Washington** [2] - 624:24, 624:25

**ways** [2] - 640:21, 645:4

**wear** [13] - 665:22,

666:3, 666:4, 666:5, 666:7, 666:9, 666:15, 666:16, 666:18, 666:22, 666:24, 666:25

**wearing** [2] - 665:19, 665:24

**wears** [1] - 666:24

**welcome** [3] - 623:8, 655:20, 657:15

**Wettre** [1] - 661:7

**whole** [9] - 633:3, 634:2, 639:14, 646:2, 646:13, 647:2, 648:5, 655:13, 660:12

**Widas** [7] - 628:6, 628:7, 633:11, 634:17, 640:25, 642:15, 643:2

**Widas's** [4] - 623:1, 634:16, 640:9, 651:24

**wide** [1] - 652:21

**wifi** [1] - 668:15

**wiggle** [1] - 660:20

**witness** [8] - 623:22, 624:13, 632:2, 632:4, 634:18, 638:25, 647:4, 656:16

**WITNESS** [2] - 624:2, 656:15

**witnesses** [2] - 632:24, 634:20

**words** [6] - 640:7, 645:4, 646:8, 654:11, 665:8, 666:11

**wore** [1] - 666:12

**worker** [2] - 626:2, 638:22

**Worker** [1] - 629:14

**works** [1] - 625:17

**write** [1] - 627:17

**writing** [1] - 627:20

**written** [1] - 665:13

## Y

**yard** [1] - 629:5

**year** [1] - 628:8

**years** [5] - 624:22, 638:18, 638:20, 638:21, 639:4

**yesterday** [5] - 662:8, 663:5, 663:11, 663:17, 665:15