**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN FODER, | |
| *Plaintiff*, | Civil Action No. 14-3935 |
| v. | OPINION |
| PORT AUTHORITY TRANS HUDSON CORPORATION, | |
| *Defendant*. | |

**ARLEO, UNITED STATES DISTRICT JUDGE**

This matter is before the Court on Plaintiff Steven Foder's Motion for a New Trial under Fed. R. Civ. P. 59(a). Dkt. No. 71. Foder brought this personal injury suit against Defendant Port Authority Trans Hudson Corp. ("PATH") under the Federal Employers' Liability Act ("FELA"), 14 U.S.C. §§ 51, et seq., seeking to hold PATH liable for injuries he suffered at the Journal Square train station. The jury returned a verdict in favor of PATH. Foder moves for a new trial on the ground that the Court should have allowed him to introduce evidence of a subsequent remedial measure. Because the Court finds that it correctly excluded such evidence from the trial, Foder's motion is **DENIED.**

**I.      Background**

In July 2011, Steven Foder, a PATH locomotive engineer, suffered an injury at the Journal Square train station in Jersey City, New Jersey. While attempting to climb onto a railcar from track (i.e., ground) level, he slipped and injured his ankle. He sued PATH under the FELA, claiming that PATH failed to provide a reasonably safe workplace.[1]

---

[1] To establish a FELA claim, a plaintiff must prove that (1) the defendant is a railroad engaged in

Foder claimed that his workplace was unsafe because, among other things, PATH used an unsafe climbing apparatus for engineers to board the railcar. The apparatus requires engineers at track level to use a step and handrail system to lift themselves up to the main level of the railcar. At the main level, engineers have to place their foot onto a piece of the railcar called the anti-climber. See DiGiulio Cert. Ex. A (photograph of anti-climber), Dkt. No. 71-1. The surface of the anti-climber is mostly diamond plate steel, a non-slip material, but the outer ring of the step is a smooth steel band a few inches wide. See id. Foder's theory of negligence was that PATH should have placed a strip of anti-slip tape on that outer ring.

Before trial, PATH filed a motion in limine to exclude evidence of subsequent remedial measures. Dkt. No. 45. PATH admitted that it placed anti-slip tape on the railcar after Foder fell, but argued that such evidence was inadmissible under Fed. R. Evid. 407, which prohibits admission of such evidence to prove negligence but allows it for impeachment in proper circumstances. Citing Petree v. Victor Fluid Power, Inc., 887 F.2d 34 (3d Cir. 1989), the Court noted that Foder could introduce the subsequent remedial measure, but only for impeachment purposes and if PATH "open[ed] the door" to the issue first. DiGiulio Cert. Ex. B, Oral Arg. Tr. 39-40.

From November 14 to 18, 2016, the Court presided over the jury trial. Three witness examinations are most relevant here. First, Foder tried to introduce evidence of the anti-slip tape during the direct testimony of Dennis Velez, a PATH car inspector. On direct examination from Foder's counsel, Velez testified as follows about his inspection of the railcar after the accident:

---

interstate commerce; (2) the plaintiff was an employee of the defendant and was acting in the course of his employment; (3) the defendant or one of its employees or agents was negligent; and (4) the plaintiff suffered an injury that resulted in whole or in part from such negligence. See Maher v. Delaware & Hudson Ry. Co., 215 F. App'x 169, 171 (3d Cir. 2007) (citing 45 U.S.C. § 51).

2

> Q. On the day that you inspected that train, what did you find?
>
> A. I found everything operating as designed.
>
> Q. Okay. Did you find any defects at all?
>
> A. No.
>
> Q. Did you find any hazards at all?
>
> A. No.
>
> Q. Did you find any unsafe conditions at all?
>
> A. No.
>
> Q. And so as far as you were concerned at the time, the anti-climber was totally safe.
>
> A. Yes.

Trial Tr. vol 2, 140-41. Foder then moved to introduce the anti-slip tape. The Court denied the request because evidence of the anti-slip tape would not impeach Velez's testimony that the railcar was safe at the time, and because the question did not properly open the door to the evidence. Id. 141-42.

Foder also asked about the anti-slip tape during his redirect examination of Kenneth Wallace, PATH's Chief Maintenance Supervisor of Inspections. Wallace testified that the railcar was compliant with federal regulations and that the regulations do not require anti-slip tape. Id. 194. Foder's counsel then asked:

> Q. When you are attempting to make the cars safe for your employees . . . [d]on't you have an obligation when you do that to make sure that what you do is safe?
>
> A. We try our very best to do everything as safe as we can, yes.
>
> Q. So you understand that you have an obligation to make it as safe as you can.

> A. I understand that I have an obligation to meet the Code of Federal Regulations. That is my job. The car has to be compliant with the Code of Federal Regulations. If we choose to change something or, you know, make something that we feel is going to be safer, that's fine to do, as long as it doesn't violate the C.F.R. The C.F.R. is what has to be done.
>
> . . . .
>
> Q. Are you saying that having non-slip material on the anti-climber would not make it safer for people climbing?
>
> A. It wouldn't hurt. Would it help? I doubt it. I don't know.

Id. 199-200, 203. After this exchange, however, Foder did not ask the Court to introduce evidence of the subsequent remedial measure. See id. 203-04.

The issue arose again during the testimony of George Widas, Foder's liability expert. On direct, Widas opined that PATH should have placed anti-slip tape on the anti-climber in order to increase slip resistance. Trial Tr. vol 3, 508-09, 515. During PATH's cross examination of Widas, he testified that he did not measure the slip resistance of the diamond plate, the hand rails, or any other friction surfaces on the train. Id. 524-26. Widas also stated that he did not measure the forces on the climb system because he "didn't have to," stating instead that "the laws of physics and our vector analysis will tell us what we need to know without measuring anything." Id. 525. When PATH asked again whether he measured the slip resistance "anywhere on this PATH train," Foder requested to be heard at sidebar. Id. 529-30. There, Foder's attorney stated that Widas "couldn't measure [the smooth strip of the anti-climber] because there was slip tape on there [when Widas inspected it], and if he keeps asking that question, that's going to be the answer, he's going to open the door." Id. 530. The Court cautioned PATH's counsel that it would permit Widas to explain as much if he continued that line of questioning, so he withdrew the question. Id.

During summation, PATH mentioned that Widas "never actually took any slip-resistance

measurements of the grab bar or the anti-climber . . . ." Trial Tr. vol 5, 725. Foder objected and, after a sidebar discussion, the Court instructed the jury "to ignore counsel's statement that . . . Mr. Widas failed to measure the slip resistance of the anti-climber." Id. 725-28.

After the no-cause verdict, Foder filed this motion for a new trial.

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 59 permits a court to order a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Whether to grant a new trial is a decision that is within the sole discretion of the district court. United States v. Skelton, 893 F.2d 40, 44 (3d Cir. 1990). The court's inquiry is twofold: "It must first determine whether an error was made in the course of the trial, and then must determine 'whether that error was so prejudicial that refusal to grant a new trial would be 'inconsistent with substantial justice.'" Meals v. Port Auth. Trans-Hudson, No. 12-2628, 2014 WL 2619843, at *1 (D.N.J. June 12, 2014) (internal citation omitted), aff'd, 622 F. App'x 121 (3d Cir. 2015).

## III. ANALYSIS

Foder argues that there were two errors that warrant a new trial. First, he argues that the Court should have allowed him to ask Velez and Wallace about the subsequent application of anti-slip tape. Second, he argues that PATH counsel's acted improperly during his questioning of Widas and during closing statements. The Court addresses each in turn.

### A. Velez and Wallace Testimony

The Court turns first to Velez and Wallace's testimony. Foder claims that he should have been allowed to impeach Velez and Wallace with evidence of the anti-slip tape.

The admissibility of subsequent remedial measures is governed by Rule 407. It prohibits

5

admission of subsequent remedial measures to prove negligence or culpable conduct. Fed. R. Evid. 407. The rule "rests on the strong public policy of encouraging manufacturers to make improvements for greater safety." Stecyk v. Bell Helicopter Textron, Inc., 295 F.3d 408, 415 (3d Cir. 2002) (internal citation and quotes omitted). But subsequent measures are allowed for other purposes, "such as impeachment or—if disputed—proving ownership, control, or the feasibility of precautionary measures." Fed. R. Evid. 407.

Impeachment based on subsequent remedial measures is proper "when the defendant opens up the issue." Kenny v. Se. Pa. Transp. Auth., 581 F.2d 351, 356 (3d Cir. 1978). The Third Circuit has recognized that "Rule 407's impeachment exception must not be used as subterfuge to prove negligence or culpability of the defendant." Petree, 887 F.2d at 39. "Under Rule 407, together with the Rule 403 unfair prejudice/probative value weighing, the trial court retains broad power to insure that remedial measures evidence is not improperly admitted under the guise of the impeachment exception." Stecyk, 295 F.3d at 416 (footnote omitted). "[A] court must interpret the impeachment exception to Rule 407 circumspectly because any evidence of subsequent remedial measures might be thought to contradict and so in a sense impeach [a party's] testimony . . . .'" Complaint of Consolidation Coal Co., 123 F.3d 126, 136 (3d Cir. 1997) (quoting Flaminio v. Honda Motor Co., 733 F.2d 463, 468 (7th Cir. 1984)).

Evidence of post-accident application of the anti-slip tape was not admissible during Velez or Wallace's testimony. This is so because Foder's counsel, not PATH, "open[ed] up the issue." Kenny, 581 F.2d at 356. He did so by asking questions that required Velez and Wallace to discuss whether the railcar was safe enough, and then he attempted to impeach their answers with evidence of the anti-slip tape. See Trial Tr. vol 2, 141 ("And so as far as you were concerned at the time, the anti-climber was totally safe."), 203 ("Are you saying that having non-slip material on the anti-

6

climber would not make it safer for people climbing?"). These lines of questioning were not in response to statements that PATH elicited from Velez or Wallace. Nor did Velez or Wallace volunteer these statements without prompting from Foder's counsel. The questions were Foder's counsel's attempt to manufacture an impeachable statement in order to admit a remedial measure through the backdoor. The Court was within its discretion to exclude such testimony. See Reynolds v. Univ. of Pennsylvania, 483 F. App'x 726, 733 (3d Cir. 2012) (excluding similar testimony because plaintiff's counsel tried to elicit impeachable statement during his examination, and noting that "[defendant] did not open the issue, so [plaintiff] should not have been allowed to create an impeachment opportunity and then impeach [the witness] using the subsequent remedial measure.").

Foder's motion does not address this critical issue. Instead, he seems to assume that an issue can be properly "opened" whenever a witness testifies about a safe condition at the behest of plaintiff's counsel. See, e.g., Br. at 15 ("Mr. Wallace opened the door to the admission of the subsequent application of the non-slip safety grip tape . . . ."). That is incorrect. Indeed, were impeachment evidence permitted in these circumstances, it would enable plaintiffs to circumvent Rule 407's requirements in virtually every case—a result the Third Circuit has expressly rejected. Stecyk, 295 F.3d at 415-16 (3d Cir. 2002) ("While the text of Rule 407 permits admission of subsequent remedial measures for impeachment, we have cautioned against permitting the exception to 'swallow' the rule.") (internal citation omitted).

Moreover, even if PATH did open the issue, the evidence of the subsequent measure would still be inadmissible because it would not "contradict the witness's testimony directly." Consolidation Coal, 123 F.3d at 136. The questions posed to Wallace and Velez rested on the same improper inference: The fact that PATH added tape after the accident means that the anti-

7

climbers were unsafe at the time of the accident. That inference is both factually inaccurate and in conflict with the policy behind the rule. The addition of an arguably better feature is not admissible to show that the original design was inadequate. See Kelly v. Crown Equip. Co., 970 F.2d 1273, 1278 (3d Cir. 1992) (citing Public Service Co. v. Bath Iron Works Corp., 773 F.2d 783 (7th Cir. 1985)).[2]

Foder disagrees, claiming that this case is similar Kenny and Petree. But both cases are both distinguishable. In Kenny, the plaintiff was attacked in a dark railroad station, and the district court allowed one of defendant's employees to testify that he replaced some blown lights in that part of station after the attack. 581 F.2d at 355-56. The Third Circuit affirmed, noting that "the evidence did not show that a protective device of a nature not previously utilized was subsequently installed, but rather established the need for replacement of that which had previously been employed." Id. at 356. And in Petree, a plaintiff was injured when he was struck by a projectile from a hydraulic press. 887 F.2d at 41. The district court excluded evidence that the employer placed a sticker on the machine after the accident warning of projectile hazards. Id. at 41. The Third Circuit reversed, finding that the sticker directly impeached the employer's expert's testimony that the machine was designed in a way that made it impossible to launch a projectile, and therefore no warning was necessary. Petree, 887 F.2d at 41. Foder's case is different. It did not involve a repair of a device that was already in use or testimony that it was impossible to slip from the anti-climber before the anti-slip tape was added. The Court will not grant a new trial on

---

[2] Wallace's testimony suffers from an additional waiver issue. Foder claims that Wallace opened the door based on the above-described testimony he gave at the end of his cross-examination. But Foder's counsel did not ask Wallace about the remedial measure after that exchange, as he did for the other witnesses. Cf. Trial Tr. vol 2, 141, 143, 144, 173. Foder cannot now argue that the Court should have let Wallace discuss the anti-slip tape when he never asked Wallace about it in the first place.

this basis.

## B. PATH Counsel's Statements During Summation

Foder also contends that a new trial is warranted because of allegedly improper comments made by PATH's counsel. Foder points to two comments in particular: PATH counsel's questions to Widas about why he did not measure the anti-climber's slip resistance, and his reference to that testimony at summation. The Court again disagrees.

In determining a motion for new trial based on improper conduct by opposing counsel, the "test is whether the improper assertions have made it 'reasonably probable' that the verdict was influenced by prejudicial statements." Fineman v. Armstrong World Indus., Inc., 980 F.2d 171, 207 (3d Cir. 1992) (internal citation omitted). "[T]he amount of alleged improprieties matters for determining whether it is reasonably probable that counsel's arguments are prejudicial." See Vandenbraak v. Alfieri, 209 F. App'x 185, 189 (3d Cir. 2006) ("Often . . . a combination of improper remarks [is] required to persuade us of prejudicial impact.") (citing Fineman, 980 F.2d at 208).

The comments Foder points to were not improper. At trial, Foder claimed that Widas could not measure the smooth edge of the anti-climber because PATH placed grip tape there. But Widas also testified that he did not measure the slip resistance of any part of the train, including areas like the handrails where there was no grip tape. And he justified that with the assertion that his analysis relied on principles, not measurements. As such, the fact that PATH's counsel raised this point during Widas's cross-examination and at summation does not put the grip tape at issue; it goes to the reliability of an engineering expert who admits that he uses no numbers and does not measure anything at all.

But assuming that the cross-examination and summation did cross the line, that is not

9

enough to warrant a new trial. When Foder's counsel objected during Widas's cross-examination, he explained at side bar that, "if he keeps asking that question, . . . he's going to open the door." Trial Tr. vol 3, 530. In response, PATH's counsel withdrew the pending question before Widas answered and moved to a different line of questioning. Id. On redirect, Foder did not ask to introduce evidence of the anti-slip tape. As such, there is little chance if any that the questioning prejudiced the jury.

The remark at summation also does not warrant a new trial. In civil trials, "'improper comments during closing arguments rarely rise to the level of reversible error." Dunn v. HOVIC, 1 F.3d 1371, 1377 (3d Cir. 1993) (en banc) (quoting Littlefield v. McGuffey, 954 F.2d 1337, 1346 (7th Cir. 1992)). The Court is not convinced that the remark could have prejudiced the jury, namely because it was a single sentence out of an entire summation, and the Court promptly instructed the jury to disregard it. Anastasio v. Schering Corp., 838 F.2d 701, 706 (3d Cir. 1988) (denying new trial where counsel made "three isolated comments in the context of an otherwise proper summation and with the benefit of the court's instructions.").[3]

IV. CONCLUSION

For the reasons set forth herein, the motion for a new trial is **DENIED**. An appropriate Order accompanies this Opinion.

**Date: May 5, 2017**　　　　　　　　　　　　　　　　　　*/s Madeline Cox Arleo*
　　　　　　　　　　　　　　　　　　　　　　　　　　　　**Hon. Madeline Cox Arleo**
　　　　　　　　　　　　　　　　　　　　　　　　　　　　**United States District Judge**

---

[3] Foder cites three cases in support, but they are unpersuasive. See Blanche Rd. Corp. v. Bensalem Twp., 57 F.3d 253, 264 (3d Cir. 1995) (noting that "the record is replete with examples of counsel misconduct"); Draper v. Airco, Inc., 580 F.2d 91, 96 (3d Cir. 1978) (describing three categories of errors that warranted a new trial); Ayoub v. Spencer, 550 F.2d 164, 170 (3d Cir. 1977) (finding statements at closing prejudicial in part because jury was not "instructed at least to disregard counsel's reference . . . .").